## CHARLESTON.

HUDKINS et al. v. CRIM et als.

Submitted June 15, 1911. Decided February 4, 1913.

1. MORTGAGES—*Nature and Requisites—Absolute Deed as Mortgage.*

Whether a deed, absolute or conditional on its face, is, in fact, a mortgage, or a mere security for the payment of.money, is a question of intent, largely determinable by the situation of the parties and, the surrounding facts and circumstances. (p. 421).

2. SAME—*Absolute Deed as Mortgage—Evidence.*

As the proof of equitable title must be clear, mere conflicting oral testimony is generally insufficient to establish it. In addition, there should be facts and circumstances making out an equity in the grantor outside of, and beyond, the oral testimony and independent of the deed. (p. 422).

3. SAME—*Nature and Requisites—Absolute Deed as Mortgage—Relinquishment of Equity of Redemption.*

If the transaction was originally a security for the payment of money, it will be regarded and treated in equity as a mortgage, and the maxim, "Once a mortgage, always a mortgage," applies, and it will remain such unless changed by a new contract upon an adequate consideration, so reasonable and fair as to relieve it of any suspicion of unconscientious advantage. Ordinarily, subsequent writing, not shown to rest upon a valuable consideration, admitting a different relation or conveying the equity of redemption do not change it. (p. 423).

4. FRAUDULENT CONVEYANCES—*Transactions Invalid—Time of Fraudulent Acts.*

A purchase of property by a married woman, *bona fide* in its inception, does not lose its character as such by the subsequent conduct of the husband intended to defraud his creditors. (p. 426).

5. JUDGMENT—*Conclusiveness—Person Concluded—Privies.*

A privy in estate is not bound by a judgment or decree recovered against him from whom he derived his estate, after he derived it, merely because of such privity. (p. 425).

6. BOUNDARIES—*Judgment—Location of Boundary.*

A decree dismissing a bill to redeem a mortgage, in a cause in which the pleadings make no definite issue as to the location of the boundary lines, but in which evidence was adduced to identify them upon the ground, is not an adjudication as to the location thereof. (p. 427).

7.  MORTGAGES—*Redemption—Action   to   Redeem—Offer   to   Do
      Equity.*

      The plaintiff in a bill to redeem from a mortgage must mani-
      fest willingness to do equity by a tender of the amount due to
      the mortgagee or by an averment of willingness to have the
      same paid out of the proceeds of the land.   (p. 427).

Appeal from Circuit Court, Barbour County.

Bill in equity by Mary J. Hudkins and another against E. H.
Crim and others for an injunction and to compel the conveyance
of a tract of land.   From a decree rejecting plaintiffs' claim of
equitable title, adjudicating the title in defendants, dissolving the ·
injunction, and awarding a writ of possession, plaintiffs appeal.

                                  *Reversed and Remanded.*

*William T. George* and *John B. Dilworth,* for appellants.

*J. Blackburn Ware* and *Warren B. Kittle,* for appellees.

POFFENBARGER, PRESIDENT:

The bill in this cause having for its purpose an injunction
against the prosecution of an action for unlawful entry and
detainer, settlement of an account, and a compulsory conveyance
of a tract of 40 acres of land, proceeds upon the assertion and
claim of a trust, the purposes of which have been accomplished.
The appeal is from a decree, rejecting the claim of equitable title,
adjudicating title in the defendant, dissolving the injunction and
awarding a writ of possession.

The question presented is very similar to that involved in the
case of *A. A. Hudkins* v. *Crim and Peck,* decided by this Court
and reported in 64 W. Va. 225.   This controversy relates to 40
acres of the 192.5 acre tract involved in that suit and there ad-
judged, as against A. A. Hudkins, to be the property of Crim's
heirs.   This 40 acre tract is claimed by the wife of E. B. Hud-
kins under a conveyance from A. A. Hudkins, ante-dating the ad-
judication against him.

She purchased it, while the creditor's suit of Crim, instituted
in November, 1885, to subject A. A. Hudkins's land to sale for ·
the satisfaction of liens, was pending.   Though a *pendente lite*
purchaser and not protected in her purchase for that reason, she
claims Crim, the moving plaintiff in that suit who purchased
the entire tract of the Hudkins land, made himself a party to the
transaction with her.   The deed from A. A. Hudkins to her is in

Crim's handwriting and he took the purchase money notes, six in number, amounting to $1,360.00, by assignment from A. A. Hudkins, which notes were never returned to her and are now in the hands of Crim's executors. As to whether any money was directly paid on them, the evidence is conflicting. After the Crim purchase of the entire tract, A. A. Hudkins and E. B. Hudkins, both hopelessly insolvent, continued to reside upon the land and continued to do business largely in the names of their wives. Sometime after the purchase by M. J. Hudkins of the 40 acre tract of land, a residence and out buildings were erected on the Hudkins farm by her and her husband, and there they have since resided and reared a family.

About the year 1902 or 1903, the Hudkinses gave to the Bijou Coal Company options upon the coal under the land, which Crim refused to recognize, but he later optioned and finally sold the coal under the entire tract to that company at the price specified in the Hudkins options. He died in January, 1905, and, when his executors took charge of his business and attempted to collect the balance due on the purchase money of the coal, the purchaser objected to payment without a release of the claim of M. J. Hudkins. M. Peck, one of the executors, thereupon prepared a quit-claim deed for execution by her and her husband, conveying all their right, title and interest in the 40 acres to E. H. Crim and C. H. Peck, heirs at law of J. N. B. Crim, and sent it by mail to E. B. Hudkins. It bears date March 21, 1905, and was acknowledged on the 28th day of March, 1905, and returned to Peck.

It is under and in connection with this conveyance that the alleged trust is set up and claimed. Following the established course of conduct, clearly shown by the testimony, M. J. Hudkins acted upon the advice and by the direction of her husband in the execution of the deed. She had no representations from Peck or the Crim heirs as to the purpose, other than those given by her husband, unless the letter transmitting the deed conveyed it, for she had no other direct communication from them or any of them. The letter is not produced nor is its contents shown. As to the purpose of the conveyance, the testimony of E. B. Hudkins, the husband, conflicts with that of Peck and E. H. Crim. He says he called upon them after the receipt of the unexecuted deed and was assured that the purpose was merely to remove the obstacle to the collection of the money due from the coal com-

pany. He says he related to them a prior understanding and agreement between his wife and J. N. B. Crim, to the effect that the balance of the purchase money due from her on her notes given to A. A. Hudkins for purchase money of the land and assigned to Crim, was to be paid out of the purchase money of the coal under that land, about 35 acres at $80.00 an acre, and the surplus paid over to her, and expressed his willingness to execute the deed in order to enable the executors to collect the money from the coal company, provided the surface of the land should be reconveyed to his wife, and that Peck assented, saying "Yes, yes", as the statements were made. He says he then went to E. H. Crim's store with the deed in his possession and obtained from Crim an envelope in which to mail the deed back after execution and make the same statement to him, and he said "All right", from which statement the witness says he inferred he would do what J. N. B. Crim had agreed to do; and he says E. H. Crim further said he had helped his father make the calculation on the amount due from E. B. Hudkins and his wife, and, in that connection, said "Interest counts up fast." All of this is flatly, positively and totally denied by both Peck and Crim. Nothing was paid for the conveyance however. The consideration recited in the deed was one dollar in hand paid.

The alleged contract between Crim and Mrs. Hudkins antedated his purchase of the Hudkins farm. Under the application of strict legal principles, her purchase under the pendency of that suit was futile and abortive. Legally and logically J. N. B. Crim took by his purchase at the judicial sale such title as a stranger would have acquired thereunder. His preparation of the deed from A. A. Hudkins to M. J. Hudkins and acceptance of the notes of the latter, as assignee, while the suit was pending, constituted no legal impediment to the purchase of the land at the judicial sale.

All of this the theory of the bill necessarily admits. Legal title in J. N. B. Crim is not denied. Though his title is absolute on its face, the bill charges the deed to be in fact a mortgage. Deeds absolute on their faces, whether made under purchases at judicial sales or not, have often been declared to be mortgages in point of fact. In *Lawrence v. DuBois*, 16 W. Va. 443, the court held the following circumstances to be indicative of the relation of mortgagor and mortgagee: "First, Where the parties admit.

that the grantor owes, after the execution of the deed, the consideration of the land to the grantee as a debt. Second, If this alleged consideration is grossly inadequate. Third, If the vendor remains in possession of the land for many years without the payment of any rent.". *Van Gilder* v. *Hoffman,* 22 W. Va. 1, adds the following circumstances as indicating that relation: "First, that the grantor was hard pressed for money and that the grantee was a known money lender; second, that the actual execution of the deed was preceded by a negotiation for a loan of money by the grantee to the grantor; third, that the parties did not apparently consider or contemplate the quantity or value of the land." In the inception of the transactions between Crim and the Hudkinses, M. J. Hudkins was not his debtor. She became so only by the execution of her notes to A. A. Hudkins and the assignment thereof to Crim. She was not then a debtor needing money, applying to a money lender for a loan. She was a purchaser of land. By that purchase, however, she became the debtor of Crim, and by her deed took an equitable title from A. A. Hudkins. Though the relation of borrower and lender between her and Crim did not exist, the relation of debtor and creditor was established, and the relation of mortgagor and mortgagee may have sprung out of Crim's purchase at the judicial sale. If, in point of fact, he purchased for her benefit, intending to permit her to pay her notes and redeem the land, and thereafter to make her a deed for it, the situation would be the same as if she had been his debtor originally and he had taken a deed from her absolute on its face, but intended to be a mortgage. *Liskey* v. *Snyder,* 56 W. Va. 610. The following authorities are to the same effect: Jones Mort., sec. 332; *Ryan* v. *Dox,* 34 N. Y. 307; *Brown* v. *Lynch,* 1 Paige (N. Y.) 147; *Sahler* v. *Singer,* 37 Barb. 329; *Guinn* v. *Locke,* 1 Head. 110; *Heisler* v. *Madeira,* 3 W. & S. (Pa.) 384; *Roberts* v. *McMahan,* 4 Ia. 34; *Sandfoss* v. *Jones,* 35 Cal. 481; *Smith* v. *Doyle,* 46 Ill. 451; *Beatty* v. *Brummett,* 94 Ind. 76; *Reese* v. *Roush,* 2 Mont. 586.

Whether such a relation was established, is a question of intent to be determined by the facts and circumstances, both contemporaneous and subsequent. *Sadler* v. *Taylor,* 49 W. Va. 104; *Liskey* v. *Snyder,* 56 W. Va. 610; *Hursey* v. *Hursey,* 56 W. Va. 148. To establish such an equitable title, the evidence ought to be clear and convincing. *Sadler* v. *Taylor,* cited; *Crim* v. *Hud-*

*kins,* 64 W. Va. 225.  Mere direct conflicting oral testimony is generally insufficient for the purpose.  There should be something decisive in the facts and curcumstances, uncontradicted or clearly established, and resolving the conflict in the oral testimony.  Hence, the presence or absence of the *indicia* mentioned is highly important.  Such facts and circumstances make out a case of equity in the grantor outside of, and beyond, the oral testimony and independent of the deed.  "In all such cases the circumstances, which surround the case, very frequently have a powerful, nay almost controlling, influence in determining the question, and the direct parol evidence may be quite weak, and yet the court may hold the absolute deed as a conditional sale or a mortgage, because these surrounding circumstances are strong to show, that such was the real character of the transaction." *Lawrence* v. *DuBois,* cited.

The oral testimony of the plaintiff and her husband is relied upon, but it is clearly incompetent.  *Freeman,* v. *Freeman* 71 W. Va. 303; *Kilgore* v. *Hanley,* 27 W. Va. 451.  However, testimony of competent witnesses to admissions by J. N. B. Crim was adduced.  L. N. B. Paugh says he had a conversation with him in the year 1904 in which he had said "that after he received the money for the coal, that he would make them a title for the surface of the land."  Aj Cleavenger says he had a conversation with him also, the substance of which he states as follows: "I asked him if there would be any of that that would go to Ed and Abe Hudkins and he told me there would be none of the coal money go to them.  That the coal money would come to him.  I made the remark to him when he told me there would be no money coming to them.  I said 'Will that leave the land pretty well out of debt', and he says 'we have not made a settlement, but pretty much I think.'"  Edward Thompson, the agent of the company that bought the coal, says Crim objected to the option made by the Hudkinses on account of the price; but said everything was all right except that he would require a little more purchase money.  As a reason for this, the witness says he stated there were certain interests down there he would have to pay for, but he did not state what those interests were.

In contradiction of this testimony, certain papers signed by the Hudkinses, and certain transactions between them and Crim in his life time, are relied upon.  The documents thus invoked are

substantially set forth in the opinion in *Hudkins* v. *Crim,* 64 W. Va. 225. All but two of them are signed only by E. B. Hudkins and A. A. Hudkins. One of the two bearing the name of M. J. Hudkins relates to personal property, giving a list thereof and declaring it to be the property of J. N. B. Crim. Those signed only by the husband, or by him in company with A. A. Hudkins, do not of course affect the rights of the plaintiff. The one in which she acknowledged the title of J. N. B. Crim to the personal property, bears date in the year 1899, some 13 years after Crim had bought the property. It is important only as bearing upon the relation between the parties. Obviously, that relation was established many years before this paper was executed. If it was that of mortgagor and mortgagee, the execution of this paper did not change its character. In so far as it acknowledges the relation of landlord and tenant, it, of course, has an important bearing, but it is not conclusive, as will be hereinafter shown. The other paper signed by M. J. Hudkins is the letter in which she offered to release her right and title to the coal in consideration of $100.00, dated May 1, 1902, after the date of the option of the coal, and relating to the negotiation of the sale thereof. It is not necessarily inconsistent with the position now taken by her. According to the theory of their bill the purchase money for the coal was to go to Crim and out of it her indebtedness was to be paid, after which the surface was to be conveyed to her and the surplus of coal money, if any, paid over to her. This letter relates only to the coal and may be construed as asserting a claim to a surplus of coal money over and above the amount of her indebtedness. These papers are not conclusive, for the relation of the parties had been fixed long before the date therof.

In all cases of this class, the maxim, "once a mortgage, always a mortgage", applies, and the relation is not extinguished or changed by subsequent writings in the absence of payment of an adequate consideration. *Sadler* v. *Taylor,* cited; *Liskey* v. *Snyder,* cited; *Hursey* v. *Hursey,* cited. In *Liskey* v. *Snyder,* many papers similar in character to those relied upon here in contradiction of parol testimony, particularly admissions of Crim, but they were unavailing. These papers may have been executed and delivered for the accomplishment of purposes and objects entirely consistent with the claims of the plaintiff, such as the better security of Crim as a creditor. Similar papers were so in-

terpreted in the case of *Liskey* v. *Snyder*.  Notwithstanding these papers, the following facts remain in corroboration and support of the admissions:  He took no deed for the land until 1902; Mary A. Hudkins remained in possession, and the land was taxed in her name; she was apparently the owner; Crim retained her notes; and this state of affairs obtained until 1899, a period of 13 years, during which nothing occurred to indicate any relationship between the parties other than that of mortgagor and mortgagee.  After the conveyance of this land to plaintiff and down to the year 1903, Crim recognized Mrs. Hudkins as having some financial credit or standing, for he repeatedly loaned money on her notes executed by her husband for and on her behalf. This land is the only property she had or claimed at any time in that long period and her husband neither owned nor claimed any property.  This conduct on his part is a strong circumstance in support of the theory of the bill.  One of the executors of Crim's will says plaintiff's husband, after the death of the testator, notified him of the danger of a levy of an execution upon the stock on the form for a debt of himself and his brother, and thus admitted the relation of landlord and tenant.  But this was not an admission as to title, nor made by the plaintiff.  The answer seems to admit that this personal property never was delivered to the executors.  It asserts a right to an accounting as to it.

The deed of March 21, 1905, executed by Mary J. Hudkins to the heirs of J. N. B. Crim, is a paper of the character of the others.  Assuming the testimony of E. B. Hudkins, as to what took place between him and Peck and E. H. Crim to have been false, it nevertheless remains that Mary J. Hudkins received nothing as a consideration for that conveyance.  Under the principles already announced, her voluntary and gratuitous execution thereof did not change the character of the relation of the parties.  Relinquishment by a mortgagor of his equity of redemption without consideration does not alter the relation of the parties in the absence of clear proof of intent to do so.  The burden is upon the mortgagee to prove he obtained it fairly and for an adequate consideration.  *Hursey* v. *Hursey*, cited; *Villa* v. *Rodriguez*, 12 Wall. 323; *Wright* v. *Bates*, 13 Vt. 341; *Henry* v. *Davis*, 7 Johns. (N. Y.) 40; *Mills* v. *Mills*, 26 Conn. 213.

As Mary J. Hudkins is an assignee of the equity of redemp-

tion of A. A. Hudkins, and therefore stands in privity with him, the adjudication in the case of *Hudkins* v. *Crim,* is relied upon here as one against her, though she was not a party to the suit. This theory is not tenable. Though she stood in privity with A. A. Hudkins, she is not bound by an adjudication against her grantor or assignor, subsequent to the acquisition of her right. "A privy in estate is not bound by a judgment or decree against him from whom he derived his estate, after he derived it, merely because of such privity." *Bensinger* v. *Fell,* 35 W. Va. 16; *Maxwell* v. *Leeson,* 50 W. Va. 361, 367; *Steel* v. *Long et al,* 104 Ia. 39; Black, Judgments, sec. 549.

The charge of fraud against the plaintiff, Mary J. Hudkins, is predicated upon the financial manipulations of A. A. Hudkins and E. B. Hudkins in their wives' names. If her purchase was *bona fide* and without fraud in its inception, the subsequent conduct of her husband could not make it fraudulent. At that time, Crim held valid liens upon all the property, good against most of the other creditors of A. A. Hudkins, possibly all of them. All the purchase money paid and the purchase money notes were delivered to him on account of his claims. Assuming indebtedness and insolvency on the part of her husband, E. B. Hudkins, the conveyance was not made in fraud of his creditors, for he did not own the land and nothing in the evidence indicates that he had any interest therein. As to the general creditors of A. A. Hudkins, Crim's debts were liens and prior, and, as the other lien creditors are not complaining, they were presumptively satisfied in some way. In her purchase of this 40 acres and application of the purchase money thereof to the lien indebtedness in favor of Crim, the plaintiff may well be supposed to have thought she was acting in good faith. The test of fraud is the intent with which the act is done, except in the few instances in which there is a conclusive legal presumption of fraud. As this is not a conveyance from husband to wife, we have not here the usual case of inability on the part of the wife to overcome the presumption of the payment of the purchase money by the husband or out of funds furnished by him. But, if there were such presumption, it has been overcome by proof that the purchase money notes of the wife alone were accepted for practically all the purchase money. Nor is there any evidence of actual fraudulent intent on the part of the wife in making the purchase.

Nothing appears upon which to base the charge except that the husband had creditors whom he was unable to pay. In purchasing this land, not from her husband, but from a third person, she did nothing to their prejudice or injury.

Evidence was taken by the defendant tending to prove the buildings of the plaintiff are not on the land claimed by her. As neither the bill nor the answer contains any specific allegation or averment as to the locations of the boundary lines, it cannot be said any issue was made respecting them. The bill avers the buildings are on the premises in question and the answer seems to make no denial of that allegation. As it states a conclusion rather than a fact, since the bill does not undertake to locate upon the ground the lines, or rather to identify them, it follows there was no issue as to the location thereof. Moreover, as the circuit court dismissed the bill, denying the plaintiff's right as to any of the land, the issue attempted to be made by the introduction of this evidence regarding the location of the boundary lines was evidently not decided by the court.

Our conclusion is that Mary J. Hudkins and J. N. B. Crim sustained toward one another the relation of mortgagor and mortgagee, and that the former was entitled to have the proceeds of the purchase money of the coal underlying her 40 acres of land credited on the purchase money notes and the interest thereon and the surplus of such proceeds, if any, paid to her. Claiming the proceeds of the coal to have been amply sufficient to pay off the balance due on her notes, she has failed to aver willingness to pay any balance that may be found against her. This, though a formal one, is a necessary allegation of a bill to redeem, and it should be amended accordingly.

For the reasons stated, the decree complained of will be reversed, the injunction re-instated, and the cause remanded for further proceedings.

*Reversed and Remanded.*