329 S.E.2d 885

**Andrew WOLVERTON and Theda Wolverton, His wife**

v.

**Clinton R. HOLCOMB and Patsy Jo Holcomb, his wife.**

**No. 16263.**

Supreme Court of Appeals of West Virginia.

April 18, 1985.

Gerald Merceruio, Webster Springs, for appellants.

William W. Talbott, Talbott & Alsop, Webster Springs, for appellees.

PER CURIAM:

This is an appeal by Andrew Wolverton and Theda F. Wolverton, his wife, from an order entered by the Circuit Court of Webster County on January 5, 1983, which dismissed their suit to establish a right-of-way over property owned by Clinton and Patsy Holcomb. The order held that the Wolvertons were barred from pursuing their ac-

tion by the doctrines of res judicata and estoppel and directed that they pay the Holcombs' attorney's fees in the amount of $715. The Wolvertons contend that the trial court erred in dismissing their action and in awarding the Holcombs' attorney's fees. After examining the questions presented, we conclude that the trial court did not err in dismissing the case, but we do conclude that the ruling on attorney's fees was erroneous.

The present proceeding was instituted by complaint filed on May 21, 1982, in which the Wolvertons alleged that they were the owners of a tract of thirty acres which had been conveyed to them by deed dated January 6, 1982, from William P. and Ala Faye Scott. The complaint stated that the Holcombs were the owners of an adjoining parcel of real estate which was located between the Wolvertons' property and State Route No. 9 and that a gravel or dirt road ran through the Holcombs' property between State Route No. 9 and the Wolvertons' property. The Wolvertons claimed a legal right-of-way over the gravel road by virtue of an express grant and reservation in their deed and in certain other documents in their chain of title. They further alleged that they had no reasonable access to their property other than the gravel road and that the road had been used in an open, adverse, continuous and uninterrupted manner for more than twenty years by the public. The Wolvertons prayed that the Holcombs be compelled to remove certain obstructions in the road and that they be compelled to restore to the Wolvertons an open way over the right-of-way. The Wolvertons also prayed that the Holcombs be enjoined from interfering with their use of the road.

After the filing of the complaint, the Holcombs filed a motion to dismiss. The motion alleged that the Wolvertons' immediate predecessors-in-title, the Scotts, had instituted litigation in the Circuit Court of Webster County against the Holcombs for a right-of-way. The motion further alleged that on May 14, 1981, the Circuit Court of Webster County had declared that the roadway in question was not a public road and that there had been no easement or

other right to use said roadway acquired by the Scotts. The Holcombs stated that the Wolvertons were well aware, prior to the institution of their action, that the issues raised in their complaint had been previously adjudicated. The motion asked that the suit be dismissed because it was barred by the doctrine of res judicata and that the Wolvertons be required to pay attorney's fees.

In the present case, the judgment order entered by the Circuit Court of Webster County in the earlier civil action between the Scotts and the Holcombs was introduced. This order indicated that the court had four issues for decision. Those issues were: (1) whether the road in question between the parties was a public road; (2) if the road in question was not a public road, did the plaintiffs have a way of necessity over the land of the defendants; (3) whether the defendants were estopped to deny the plaintiffs the right to use the disputed roadway; and (4) whether the plaintiffs had obtained a prescriptive right to use the roadway in question. In its order the court found against the Scotts on all the issues.

The trial court conducted a short hearing on the motion to dismiss the present action. The Wolvertons argued that their action was not barred by the doctrine of res judicata because they were raising a new issue, that they had an express easement across the Holcombs' land. The court rejected this argument and awarded attorney's fees to the Holcombs.

The Wolvertons assert that, because the cause of action in their case differed from that in the Scott-Holcomb litigation and because the parties are not the same, neither the doctrine of res judicata nor that of collateral estoppel applies.

It is important to note that the Wolvertons acquired their title from the Scotts on January 6, 1982. This tract was a part of a larger tract owned by the Scotts and was the tract involved in the earlier right-of-way controversy with the Holcombs. The earlier suit was initially concluded by an order of May 14, 1981, when the court

found that the Scotts had no right-of-way across the Holcombs' property. A motion for new trial was subsequently filed and denied in an order dated April 14, 1982. The present case by the Wolvertons was filed on May 21, 1982.

In *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983), we summarized, in Syllabus Point 4, our rule that res judicata applies not only to the parties, but to their privies:

"A common requirement for the application of *res judicata* and collateral estoppel was that there had to be mutuality of parties between the first suit which had proceeded to judgment and the second suit where the defense of *res judicata* or collateral estoppel was being asserted. The concept of mutuality extended not only to the named parties but to those who were privy to them."

With regard to who is a privy when title to real estate is involved, we recognized in Syllabus Point 5 of *Gerber v. Thompson,* 84 W.Va. 721, 100 S.E. 733 (1919), that if the interest is acquired after the litigation is commenced, then the purchaser becomes a privy:

"For the purpose of the application of the rule of *res judicata* to persons because of their privity with the parties to a suit, it must appear that the estate or interest of such a one was acquired from or through such actual party after the litigation. If his interest in the cause of action or the subject-matter of the litigation was acquired prior to the litigation he will not be bound by the judgment."

*Gerber* cited several of our earlier cases. *E.g., Hudkins v. Crim,* 72 W.Va. 418, 78 S.E. 1043 (1913); *Maxwell v. Leeson,* 50 W.Va. 361, 40 S.E. 420 (1901); *Bensimer v. Fell,* 35 W.Va. 15, 12 S.E. 1078 (1891). Its principle continues to be good law. *Howard Cole & Co. v. Williams,* 157 Fla. 851, 27 So.2d 352 (1946); *Twin City Federal Savings & Loan Ass'n v. Radio Service Lab's, Inc.,* 242 Minn. 10, 64 N.W.2d 32 (1954); *Nationwide Ins. Co. v. Steigerwalt,* 21 Ohio St.2d 87, 255 N.E.2d 570 (1970); *Hidden Meadows Development Co. v.*

*Mills,* 590 P.2d 1244 (Utah 1979); 46 Am. Jur.2d *Judgments* §§ 532 and 533 (1969).

Once it was determined that the Wolvertons were in privity with the Scotts, then they were correctly foreclosed by the circuit court from asserting a new theory for a right-of-way. Our established law in this area is set out in Syllabus Point 1 of *Conley:*

" ' "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*" Point 1, Syllabus, *Sayre's Adm'r v. Harpold,* 33 W.Va. 553 [11 S.E. 16].' Syllabus Point 1, *In re Estate of McIntosh,* 144 W.Va. 583, 109 S.E.2d 153 (1959)."

In view of the authority in this area, we are of the opinion that a party who becomes a privy through succession to title of land is bound by judgments for or against the party from whom he obtained the land so long as he obtained title after institution of the litigation which resulted in the judgment.

The Wolvertons also claim that the trial court erred in awarding attorney's fees against them.

At the time of the filing of their complaint, the Wolvertons moved for a preliminary injunction to enjoin the Holcombs from blocking the way in question. The court granted the injunction to take effect when a bond was posted by the Wolvertons to pay any cost awarded against them and any damages incurred in the event the injunction was dissolved. The court ordered the bond in accordance with the requirements of W.Va.Code, 53–5–9. This statute also provides that no injunction shall take

effect until bond is posted. The Wolvertons failed to post the bond required in the injunction decree.

 Our cases make a distinction between counsel fees incurred in resisting the issuance of an injunction bond and counsel fees incurred in procuring the dissolution of an injunction improperly issued. It has been recognized that fees occurred in resisting the issuance of an injunction cannot be recovered in an action for damages on an injunction bond whereas fees incurred in procuring the dissolution of the injunction are recoverable. The rule is most succinctly set forth in the Syllabus Points of *State ex rel. Meadow River Lumber Co. v. Marguerite Coal Co.,* 104 W.Va. 324, 140 S.E. 49 (1927). In Syllabus Point 1, it is stated:

"In an action on an injunction bond, counsel fees and expenses expended in resisting the issuance of a preliminary writ of injunction are not damages sustained from the issuance of the writ; and are therefore not in the condition of the bond, and cannot be taken into account in determining the amount of damages that are caused by it."

In Syllabus Point 2 of the same case, it is stated:

"When counsel fees and personal expenses are sought to be recovered as damages on an injunction bond, it is incumbent on the plaintiff to show either that injunction was the sole relief to which the suit pertained, or that the fees and expenses were paid out solely for the purpose of procuring a dissolution of the injunction, as distinguished from expenditures for the hearing of the principal issues involved in the case."

In *State ex rel. Bush v. Carden,* 111 W.Va. 631, 163 S.E. 54 (1932), we noted that there is a difference between where the sole relief sought is an injunction and where injunctive relief is ancillary to other relief sought. In Syllabus Point 2 of that case, it is stated:

"In an action on an injunction bond, when the injunction is only ancillary to the main object of the suit, counsel fees paid for services in the suit as a whole, are not recoverable."

*See Humphrey Mfg. Co. v. Elkins,* 93 W.Va. 16, 115 S.E. 846 (1923); *State ex rel. Hudson v. Nash,* 72 W.Va. 812, 79 S.E. 829 (1913).

 In the case before us, the injunction sought by the Wolvertons was never issued because they failed to post the bond with the circuit court as required by W.Va.Code, 53-5-9. Because the injunction never took effect, the proceeding obviously did not involve the question of whether the injunction should be dissolved. Additionally, the focus of the proceedings before the circuit court was not the injunction, but the Wolvertons' right to relief in their principal case. The injunction was only an ancillary matter. Consequently, under the foregoing law, we believe that the court erred in awarding attorney's fees against the Wolvertons.

For the foregoing reasons, the judgment of the Circuit Court of Webster County is affirmed so far as the dismissal order is concerned and reversed on the attorney's fee question.

Affirmed, in part, and Reversed, in part.