400 S.E.2d 220

**William SATTLER**

v.

**Ralph BAILEY, in His Former Capacity as a Member of the West Virginia Department of Public Safety, a Governmental Agency of the State of West Virginia, and Ralph Bailey, Individually; West Virginia Department of Public Safety, a Governmental Agency of the**

State of West Virginia; John W. O'Rourke, in His Official Capacity as Former Superintendent of the West Virginia Department of Public Safety; Fred W. Donahoe, in His Official Capacity as Superintendent of the West Virginia Department of Public Safety and Successor in Office of John W. O'Rourke, Former Superintendent of the West Virginia Department of Public Safety.

No. 19249.

Supreme Court of Appeals of West Virginia.

Nov. 30, 1990.

Ernest V. Morton, Jr., Morton & Morton, Webster Springs, Michael C. Farber, Sutton, for William Sattler.

Daniel Schuda, Steptoe & Johnson, Charleston, for Ralph Bailey et al.

McHUGH, Justice:

The appellant, William Sattler, brought this appeal of a final order of the Circuit Court of Kanawha County, West Virginia, granting the appellees' motion to dismiss on the ground that a judgment in a federal civil action involving the same parties was *res judicata* for purposes of this state civil action.[1] We conclude that the federal

---

1. The appellees' motion was for dismissal of the action with prejudice. In granting the motion

court's ruling was not *res judicata* and, accordingly, reverse and remand for further proceedings. In addition, we believe it is appropriate to provide guidance on the statute of limitations defense, which was raised as an alternative ground for the motion to dismiss.

I

The facts of this case must be recited in some detail in order to understand the proper application of the law.[2]

On March 4, 1982, a fire destroyed the appellant's tavern in Nicholas County, West Virginia. Shortly thereafter, a fire incident report compiled by the local volunteer fire department indicated that the apparent cause of the fire was an accidental problem associated with a coal-burning stove in the tavern. In April of 1983, however, the appellant began to hear gossip about the possible arson of his tavern by the then Sheriff of Nicholas County, Darrell Johnson. A newspaper article in June, 1983, also suggested that the Prosecuting Attorney of Nicholas County had evidence that the appellant's tavern had been destroyed due to the arson committed by the county sheriff. The newspaper article stated that a report prepared by a state police officer who had investigated the matter ("the Shelton report") indicated there was *no* evidence that *state* police officers as-

signed to Nicholas County had been involved in the arson.

After the Prosecuting Attorney of Nicholas County refused to provide a copy of the Shelton report, the appellant brought a mandamus proceeding in this Court to compel disclosure by the prosecutor under the State Freedom of Information Act.[3] In *Sattler v. Holliday,* 173 W.Va. 471, 318 S.E.2d 50 (1984), we held that the appellant's request for relief from this Court was premature because the Circuit Court of Nicholas County had not been given the statutorily required opportunity to evaluate the propriety of the prosecutor's refusal to disclose the investigative report. *Id.,* 173 W.Va. at 472–73, 318 S.E.2d at 52.

In February, 1984, the appellant brought a civil action under 42 *U.S.C.* § 1983, as amended, in the United States District Court for the Southern District of West Virginia. His claim for deprivation of civil rights as a result of the alleged arson of his tavern, and as a result of the alleged conspiracy related thereto, was brought against Sheriff Johnson and two of his deputies, Lloyd Dillon and Robert Bennett, among other governmental officials. On October 31, 1984, one of the appellees here, Ralph Bailey, a former state police officer, denied involvement in the alleged arson, during a deposition taken by the appellant in the federal civil rights action.[4]

to dismiss pursuant to Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure,* the Circuit Court of Kanawha County referred to dismissal of the complaint and was silent in its order as to whether the dismissal was with prejudice. However, under Rule 41(b) of the *West Virginia Rules of Civil Procedure,* a dismissal under Rule 12(b)(6) operates as an adjudication upon the merits unless the dismissal order specifies otherwise.

**2.** An outline of the salient events is as follows:

March 4, 1982: appellant's tavern destroyed by fire.

February, 1984: appellant filed his first complaint in federal civil rights action in federal court.

October 10, 1985: appellee Bailey and others were indicted for alleged arson of appellant's tavern.

September, 1986: appellant filed his second complaint in federal civil rights action in federal court; this complaint added the appellees

here (other than former Superintendent O'Rourke).

February, 1987: federal district court granted defendants' motion to dismiss based upon two-year statute of limitations.

October 1, 1987: appellant brought this civil action in Kanawha County Circuit Court against appellees for property damage; circuit court subsequently granted appellees' motion to dismiss based upon alleged *res judicata* effect of federal court ruling.

**3.** *W.Va.Code,* 29B-1-1 to 29B-1-6 [1977]. There is a specific exemption from disclosure for records of law enforcement agencies that deal with the detection and investigation of crime. *W.Va.Code,* 29B-1-4(4) [1977].

**4.** At that time the appellant was aware of rumors that the Shelton report had cleared Bailey of anything other than innocently picking up and delivering to others some of the "firebomb" materials utilized in the alleged arson of the appellant's tavern.

On October 10, 1985, Messrs. Johnson, Dillon, Bennett, and appellee Bailey were indicted by state and federal grand juries for their alleged involvement in the alleged arson of the appellant's tavern. Bailey subsequently was found not guilty of the criminal charges.[5]

In September, 1986, the appellant agreed to have the federal district court dismiss his 1984 complaint without prejudice. The appellant obtained agreements from two of the defendants, Johnson and Dillon, to waive their right to assert that the action was barred by the statute of limitations in the event that the appellant filed another complaint in federal district court. Two days after the appellant agreed to have his first complaint dismissed, he filed a second complaint in federal district court. The second complaint added, as defendants, among others, three of the four appellees here, namely, Bailey, the West Virginia Department of Public Safety (Bailey's employer at the relevant time) and Mr. Donahoe, as Superintendent of the West Virginia Department of Public Safety. The second complaint filed in federal district court was otherwise nearly identical to the first complaint.

The defendants in the federal civil rights action, other than Johnson and Dillon, moved to dismiss on the ground that the federal civil rights action was barred by the analogous, two-year, general state statute of limitations for personal injuries and property damage, *W. Va. Code*, 55–2–12 [1959].[6] The appellant contended his action was not time-barred because an alleged cover-up of their involvement by these defendants had prevented him from obtaining sufficient information to form the basis of a complaint against them until the issuance of the indictments in October, 1985.

In February, 1987, the federal district court granted the motion to dismiss. It held that the appellant had discovered sufficient information to form the basis of the complaint against some of the defendants (Johnson, Dillon and Bennett) in February, 1984, and that the statute of limitations was not tolled as to the defendants added later, namely, the appellees here. On appeal the United States Court of Appeals for the Fourth Circuit affirmed the dismissal based upon the statute of limitations. *Sattler v. Johnson*, 857 F.2d 224 (4th Cir. 1988).

On October 1, 1987, the appellant filed the complaint in this civil action in the Circuit Court of Kanawha County, West Virginia. Messrs. Bailey and Donahoe, as well as Mr. O'Rourke, Donahoe's predecessor in the office of Superintendent of the West Virginia Department of Public Safety, and that Department were named as the defendants. The appellant alleged in this complaint that Bailey, Johnson, Dillon and Bennett were responsible for destroying his tavern by fire; that O'Rourke and Donahoe and the West Virginia Department of Public Safety had negligently supervised Bailey; that the appellant had used due diligence to discover the perpetrators of the alleged arson; and that he had been able to identify and bring legal action against Johnson, Dillon and Bennett within two years of the date of the tort, but that, due to a cover-up by the West Virginia Department of Public Safety, the appellant had been unable to identify Bailey as one of the perpetrators until the indictments against him were returned on October 10,

---

**5.** For purposes of this appeal, the allegations of Bailey's involvement in causing the property damage must be taken as true: "On appeal of a dismissal based on granting a motion pursuant to West Virginia Rules of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true." Syl. pt. 1, *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987).

We also note that the burden of proof in a criminal case, specifically, proof beyond a reasonable doubt, is greater than the proof required ordinarily in a civil case, specifically,

proof by a preponderance of the evidence. Therefore, it is conceivable that a jury in this civil action, based upon the preponderance of the evidence, would find appellee Bailey to be liable to the appellant for Bailey's role in the destruction of the appellant's tavern by fire.

**6.** The material portion of *W.Va.Code*, 55–2–12 [1959] is as follows: "Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property[.]"

1985, within two years of the filing of this action.

The defendants-appellees moved to dismiss this state civil action on the ground that the action was barred by the alleged *res judicata* effect of the judgment of the federal court holding that the federal civil rights action against the same defendants involved here was time-barred. As an alternative ground for their motion to dismiss, the appellees argued that, disregarding the federal court's ruling, this action was time-barred.

After reviewing the briefs and oral argument of counsel on both the *res judicata* issue and the statute of limitations issue, the Kanawha County Circuit Court granted the motion to dismiss on the ground of *res judicata*. The circuit court indicated that it might have ruled differently on the statute of limitations issue but felt bound by the federal ruling.

## II

The doctrine of *res judicata*, while often difficult to apply, is rather well settled in its general contours. *See Conley v. Spillers*, 171 W.Va. 584, 588 n. 2, 301 S.E.2d 216, 219 n. 2 (1983). The essence of the doctrine of *res judicata* (meaning, a matter adjudged) is that a judgment in a prior action bars a subsequent action involving the same parties (or their privies) and the same cause of action which were involved in the prior action. The thrust of the *res judicata* doctrine is the finality of judicial decisions. *Black's Law Dictionary* 1305 (6th ed.1990). *See also Restatement (Second) of Judgments* § 19 (1980). The purpose of this doctrine, sometimes referred to as "claim preclusion," is to preclude the expense and vexation attending relitigation of causes of action which have been fully and fairly decided. The doctrine also conserves judicial resources and minimizes the risk of inconsistent decisions. *Conley,* 171 W.Va. at 588–89, 301 S.E.2d at 219–20.[7]

 In the present case we need not attempt a comprehensive explanation of each of the elements of *res judicata.* Simply stated, the two basic elements of the doctrine of *res judicata,* in addition to a final judgment on the merits by a court of competent jurisdiction in a former action, are (1) identity of the cause of action and (2) identity of the parties (or their privies); that is, the same cause of action and the same parties (or those in privity with them) are involved in the former and subsequent actions. With respect to the first "identity," that of the cause of action, the doctrine of *res judicata* does not require that the matter was in fact litigated in the prior action; instead, such doctrine applies to bar subsequent litigation of every matter which legitimately could have been litigated on the merits in the prior action, as within the subject matter of the prior action. This aspect of *res judicata* was stated in syllabus point 1 of the early case of *Sayre's Adm'r v. Harpold,* 33 W.Va. 553, 11 S.E. 16 (1890):

> An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*

(emphasis in original) *Accord,* syl. pt. 1, *State ex rel. Division of Human Services v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990); syl., *Goodwin v. Thomas,* 179 W.Va. 593, 371 S.E.2d 90 (1988); *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 299, 359 S.E.2d 124, 131 (1987); syl. pt. 2, *Moran v. Reed,* 175 W.Va. 698, 338 S.E.2d 175 (1985); syl. pt. 3, *Wolverton v. Holcomb,* 174 W.Va. 812, 329 S.E.2d 885

---

7. *Conley v. Spillers* also distinguishes between *res judicata* and "collateral estoppel," and that discussion will not be reiterated here. The issue of collateral estoppel has not been raised in this case before the circuit court or this Court.

(1985); syl. pt. 1, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983); syl. pt. 1, *In re Estate of McIntosh,* 144 W.Va. 583, 109 S.E.2d 153 (1959).

In the case now before this Court the first "identity," that of the cause of action, is lacking. The prior action, brought in the federal district court, was for deprivation of civil rights, pursuant to a federal statute. This subsequent action, brought in the state circuit court, was for property damage, pursuant to state common law. While the appellant could have joined his state property-damage claim with the federal civil rights claim in the federal action, thereby conferring upon the federal court "pendent" jurisdiction of the state property-damage claim, it is clear that the federal court would have declined to exercise such pendent jurisdiction once it dismissed the federal claim prior to trial as time-barred.[8]

This situation is covered by illustration 10, under comment e, to the *Restatement (Second) of Judgments* § 25 (1980):

> e. *State and federal theories or grounds.* A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. *If however, the court in the first action* would clearly not have had jurisdiction to entertain the omitted theory or ground (or, *having jurisdiction,*

> *would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.* See Illustrations 10–11.

> ....

> 10. A commences an action against B in a federal court for treble damages under the federal antitrust laws. After trial, judgment is entered for the defendant. A then seeks to commence an action for damages against B in a state court under the state antitrust law grounded upon substantially the same business dealings as had been alleged in the federal action. Even if diversity of citizenship between the parties did not exist, the federal court would have had 'pendent' jurisdiction to entertain the state theory. Therefore *unless it is clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction (for example, because the federal claim, though substantial, was dismissed in advance of trial),* the state action is barred.

(emphasis added) The reporter's note to illustration 10 indicates that the last sentence of that illustration is derived from *Gibbs, see supra* note 8: "If in a given case it is clear that a federal court, applying the criteria elaborated in *Gibbs,* would not have entertained the state theory, the state action should not be barred [by *res judicata* ]."

 Consistent with *Gibbs,*[9] most courts have held, and we hereby hold, that, when the federal claim in a federal action is

---

**8.** For a discussion of a federal court's "pendent" jurisdiction of a state claim see *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and 32A Am.Jur.2d *Federal Practice and Procedure* §§ 1247–48 (1982). "Pendent" jurisdiction of a state claim exists when there is a federal claim having sufficient substance to confer subject-matter jurisdiction on the federal court, and the federal claim is joined with a state claim so related to it that the two claims comprise a single case. The state and federal claims must derive from a common nucleus of operative facts, such that the plaintiff ordinarily would be expected to try both the federal and state claims in one action. Even though pendent jurisdiction exists, it need not

be exercised by the federal court; pendent jurisdiction is a doctrine calling for judicial discretion as to whether such jurisdiction should be exercised. Certainly, if the federal claims are dismissed before trial, even though substantial in a jurisdictional sense, the state claims usually should be dismissed as well, without prejudice to resolution in state court. *Gibbs,* 383 U.S. at 725–26, 86 S.Ct. at 1138–39, 16 L.Ed.2d at 227–28.

**9.** Specifically, see the last sentence of note 8 *supra,* paraphrasing the pertinent language from *Gibbs.*

dismissed by the federal court prior to trial, and, therefore, it is clear that the federal court would have declined to exercise jurisdiction of a related state claim which could have been raised in the federal action pursuant to the "pendent" jurisdiction of the federal court, a subsequent action in a state court on the state claim which would have been dismissed, without prejudice, in the prior federal action is not barred by the doctrine of *res judicata. See, e.g., Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 618–19 & n. 7, 98 L.Ed.2d 720, 729–30 & n. 7 (1988); *Merry v. Coast Community College District,* 97 Cal.App.3d 214, 158 Cal.Rptr. 603 (1979) (prior federal action with federal civil rights claim; subsequent state action with state claims of fraud, etc.), *hearing denied* (Cal. Nov. 21, 1979); *Puckett v. City of Emmett,* 113 Idaho 639, 747 P.2d 48 (1987) (prior federal action with federal civil rights claim; subsequent state action with state claim of breach of settlement agreement). *See also* 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* para. 18.07 [1.–3], at 18–53 (2d ed.1990) (collecting cases); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567.1, at 133 (2d ed. 1984 & Supp. 1990) (collecting cases); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4412, at 95–96 (1981 & Supp. 1990) (collecting cases).

Accordingly, the Circuit Court of Kanawha County committed reversible error by concluding that this action was barred by the alleged *res judicata* effect of the judgment in the federal action.

### III

As an alternative to the *res judicata* ground for their motion to dismiss, the appellees moved to dismiss on the ground that the appellant's action was barred by the two-year statute of limitations, *W.Va. Code,* 55–2–12 [1959], *see supra* note 6. The Circuit Court of Kanawha County mentioned but did not decide this statute of limitations issue because it granted the motion to dismiss on the *res judicata* ground.

■ We are aware of the rule that generally, " '[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' " Syl. pt. 4, *Northwestern Disposal Co. v. West Virginia Public Service Commission,* 182 W.Va. 423, 388 S.E.2d 297 (1989) (internal citation omitted). *Accord,* syl. pt. 2, *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987), and the cases cited therein. On the other hand, although this Court's determination of one assignment of error results in a reversal of the ruling being reviewed, it is appropriate, in the interest of judicial economy, that we should pass upon the other assignments of error involving questions which likely will arise after remand. *See, e.g., Turner v. Hall,* 128 Va. 247, 255, 104 S.E. 861, 864 (1920).[10] In view of this principle we believe it is appropriate to discuss the statute of limitations issue.

■ The statute of limitations in a tort action begins to run ordinarily from the date of the injury, and the mere lack of knowledge of the actionable wrong ordinarily does not suspend the running of the statute of limitations, nor does the silence of the wrongdoer, unless he or she has done something to prevent discovery of the wrong. *State ex rel. Ashworth v. State Road Commission,* 147 W.Va. 430, 437, 440, 128 S.E.2d 471, 476, 478 (1962). *See also* syl. pt. 1, *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986) (statute of limitations ordinarily begins to run when injury is inflicted).

*W.Va.Code,* 55–2–17 [1931], however, tolls the running of the statute of limitations in certain circumstances, including the common-law doctrine tolling the statute of limitations when the defendant has fraudulently concealed the cause of action.

10. *Cf. W.Va. Const.* art. VIII, § 4 ("every point fairly arising upon the record shall be considered and decided"); syl. pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979) (this Court will use prohibition in a discretionary way to correct substantial, clear-cut, legal errors in cases where there is a high probability that the judgment will be reversed if the error is not corrected in advance).

The pertinent portion of that statute is as follows:

> Where any such right as is mentioned in this article shall accrue against a person ..., if such person shall ... by ... concealing himself [or herself], or by any other indirect ways or means, obstruct the prosecution of such right, ... the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted.

In this regard this Court has held that obstruction by the defendant must be by a positive act and that, therefore, mere silence will not constitute obstruction sufficient to toll the running of the statute of limitations, unless there is a duty to disclose, due to, for example, a fiduciary or other confidential relationship between the defendant and the plaintiff. *Hundley v. Martinez*, 151 W.Va. 977, 986, 158 S.E.2d 159, 165 (1967) (collecting cases).

Moreover, the traditional rule, espoused by virtually all of the courts in the older cases and by some of the courts in the more modern cases, is that affirmative concealment of the *identity* of the wrongdoer, rather than affirmative concealment of the cause of action itself, does not constitute fraudulent concealment or obstruction of prosecution sufficient to toll the running of the statute of limitations. *See, e.g., International Brotherhood of Carpenters, Local 1765 v. United Association of Journeymen, Local 803*, 341 So.2d 1005 (Fla.Dist. Ct.App.1976) (collecting cases; recognizing that this rule rewards those tortfeasors who fraudulently conceal their identity), *cert. denied*, 357 So.2d 186 (Fla.1978); *McDaniel v. La Salle Ambulance Service, Inc.*, 108 Ill.App.3d 1042, 1045, 64 Ill.Dec. 606, 608, 440 N.E.2d 158, 160 (1982). *See also* annotation, *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576, § 11 (1948) (collecting cases); 51 Am.Jur.2d *Limitation of Actions* § 148, at 721 (1970 & Supp.1990); 54 C.J.S. *Limitations of Actions* § 89, at 129, § 90, at 129 (1987 & Supp.1990). Although most of these cases do not state the logic for distinguishing between affirmative concealment of the identity of the wrongdoer and affirmative concealment of the cause of action itself, the logic appears to be that the fraudulent concealment exception to the statutory period of repose should be strictly construed. That is, once the injured person is aware of the cause of action itself (viewed as involving only the injury), the period of limitation usually should afford sufficient opportunity to discover the identity of all of the wrongdoers, and the courts usually should defer to the limitation period selected by the legislature.

Nonetheless, some of the more modern cases hold that the plaintiff's knowledge of the grounds for an action must generally extend to an awareness of the *persons* responsible for the plaintiff's injury. While a plaintiff may not postpone the filing of an action until he or she knows the identity of every defendant, a plaintiff cannot reasonably be held to know of every other defendant merely because he or she knows the identity of one or more defendants who allegedly are responsible for the plaintiff's injury. *Hobson v. Wilson*, 737 F.2d 1, 36 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). *See also Richards v. Mileski*, 662 F.2d 65, 69–71 (D.C.Cir.1981); *Fitzgerald v. Seamans*, 553 F.2d 220, 229 (D.C.Cir.1977).

Another aspect of the fraudulent concealment doctrine is that generally, the denial of any wrongdoing is insufficient by itself to constitute an affirmative act of concealment, which, as stated above, is required in order to toll the statute of limitations under this doctrine. *United National Records, Inc. v. MCA, Inc.*, 609 F.Supp. 33, 36 (N.D. Ill.1984). However, the act of denying wrongdoing may constitute fraudulent concealment when the circumstances make the plaintiff's reliance upon the denial reasonable. *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). Furthermore, it has been held that any word or act tending to suppress the truth will be enough to constitute fraudulent concealment, *Richards v. Mileski*, 662 F.2d 65, 70 (D.C.Cir.1981), especially when the plaintiff is impeded in discovering the

identity of the alleged wrongdoer(s) in question by the invocation of governmental secrecy, that is, by nondisclosure based upon confidential investigations or "executive privilege," *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir.1977), or when there are words or acts to cover up the identity of the alleged wrongdoer(s) in question, *Bell v. City of Milwaukee,* 746 F.2d 1205, 1231 (7th Cir.1984).

In the *Bell v. City of Milwaukee* case, there were allegations of a conspiracy by public officials and employees to cover up the tortious conduct of a city police officer. The court held that such allegations were of "conduct so unfair, misleading, and outrageous as to outbalance the public's interest ... in setting a limitation on bringing an action and thus carves an exception out of the statute of limitations." *Id.*[11]

■ In conformity with these more modern cases, this Court holds that the general statute of limitations, *W.Va.Code,* 55–2–12, as amended, is tolled, with respect to an undiscovered wrongdoer, by virtue of the fraudulent concealment or obstruction of prosecution doctrine embodied in *W.Va. Code,* 55–2–17, as amended, when an action is brought timely against the known wrongdoer(s) and, despite the due diligence of the injured person to discover the identity of all the wrongdoers, the identity of one or more of them is hidden by words or acts constituting affirmative concealment, that is, a "cover-up." Tolling of the statute of limitations with respect to an undiscovered wrongdoer is especially appropriate in a case in which, as part of the cover-up, the injured person is impeded in discovering the identity of the wrongdoer in question by the invocation of governmental secrecy. In a case involving a wrongdoer whose identity is affirmatively concealed, the injured person must bring his or her action against such wrongdoer within the statutory period after the injured person discovers, or reasonably should have discovered, that wrongdoer's identity.[12]

■ In the present case the appellant alleged in his complaint that, despite his due diligence, he was not, and reasonably should not have been, aware of appellee Bailey's alleged involvement in the alleged tort until appellee Bailey was indicted on October 10, 1985, which was within the requisite two years of the filing of this action on October 1, 1987. The appellant also alleged that there was a cover-up of Bailey's involvement by the appellee West Virginia Department of Public Safety, particularly by the Shelton report. Finally, the appellant alleged that his efforts to discover the identity of all of the alleged tortfeasors was thwarted by the invocation of governmental secrecy, that is, by nondisclosure based upon confidential investigations by law enforcement agencies. Furthermore, appellee Bailey's denial of wrongdoing, during the deposition in the federal action, constituted fraudulent concealment, for purposes of the motion to dismiss, because the appellant, until Bailey's indictment, reasonably relied upon such denial in light of the rumors that the Shelton report had cleared Bailey of any

11. *Blanck v. McKeen,* 707 F.2d 817 (4th Cir.), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983), is not instructive here. In that case the plaintiffs did not bring a tort action against *any* of the defendants until more than five years after the plaintiffs had brought a contract action against related defendants based upon the same transactions. The court in *Blanck* held that the tort and contract claims were "necessarily intertwined" and that the plaintiffs were "on notice" of their tort claim at the time of their contract action. The fact that the plaintiffs did not know the identity of all of the persons involved did not toll the statute of limitations with respect to *all* of the defendants, known and unknown. 707 F.2d at 819–20.

In contrast, the appellant in the case now before this Court did timely bring an action against the known wrongdoers, and with respect to the defendants-appellees, we conclude that the allegations of a cover-up and due diligence are sufficient to withstand the motion to dismiss based upon the statute of limitations.

12. When tolling of the statute of limitations is proper because the defendants in question have affirmatively concealed their involvement in a cause of action about which the plaintiff might otherwise be aware, such defendants have the burden of going forward with any evidence showing that the plaintiff did not exercise due diligence to discover their involvement. *Richards v. Mileski,* 662 F.2d 65, 71 (D.C.Cir.1981).

involvement in the alleged arson.[13] We believe these allegations were sufficient to withstand the motion to dismiss based upon the statute of limitations.[14]

Based upon all of the above, the final order of the Circuit Court of Kanawha County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

**13.** For purposes of the motion to dismiss, the plaintiff's-appellant's allegation that Bailey was involved in the destruction of the appellant's tavern must be taken as true. *See supra* note 5.

**14.** This Court agrees with these comments in *Richards v. Mileski,* 662 F.2d 65 (D.C.Cir.1981):

There is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense. Although it is true that a complaint sometimes discloses such defects on its face, it is more likely that the plaintiff can raise factual setoffs to such an affirmative defense. The filing of an answer, raising the statute of limitations, allows both parties to make a record adequate to measure the applicability of such a defense, to the benefit of both the trial court and any reviewing tribunal. We do not hold that the use of a motion to dismiss is always improper to raise a statute of limitations defense, but we do suggest that a responding party often imposes an undue burden on the trial court and impedes the orderly administration of the lawsuit when he relies on a motion to dismiss to raise such an affirmative defense. *Id.* at 73.