401 S.E.2d 227

**WETZEL COUNTY SOLID WASTE AUTHORITY, a Public Authority of the State of West Virginia; Robert Phillips, Jean Phillips, Robert Burgess, Helen Burgess, Arnold Smith, Nancy Smith, Orville Sizemore and Flora Sizemore**

v.

**WEST VIRGINIA DIVISION OF NATURAL RESOURCES, and Its Director, J. Edward Hamrick, III; Its Division of Waste Management and Chief Thereof, George Max Robertson; Honorable Charles King, Judge of the Circuit Court of Kanawha County; and Lackawanna Transport Company, a Pennsylvania Corporation.**

No. 19741.

Supreme Court of Appeals of West Virginia.

Dec. 19, 1990.

**484**

Larry Harless, Charleston, Tom Rodd, Morgantown, for Wetzel County Solid Waste.

Shirley A. Seccurro, Marie M. Fakedej, Charleston, for Dept. of Natural Resources.

Ricklin Brown, Bowles, Rice, McDavid, Graff & Love, Charleston, William R. Fox, Differ, Callahan, Ulrich & O'Hara, Norristown, Pa., for Lackawanna Transport.

James W. Peters, Woodsfield, Ohio, Stephen D. Annand, H. Gerard Kelley, Shuman, Annand & Poe, Charleston, for petitioners and filed brief of amicus curiae Wetzel County Com'n.

Patrick McGinley, Morgantown, for petitioners and filed brief of amicus curiae.

BROTHERTON, Justice:

On June 15, 1990, the West Virginia Division of Natural Resources ("DNR") issued a compliance order pursuant to West Virginia Code § 20–9–12c(b)(2), which directed Lackawanna Transport Company to gradually reduce its waste disposal at the Wetzel County Landfill from 25,000 tons to 9,999 tons per month by May 30, 1991.

The petitioners, the Wetzel County Solid Waste Authority, now ask this Court to issue a writ of prohibition, arguing that the DNR lacked statutory authority to allow Lackawanna to continue to dispose of more than 9,999 tons of solid waste without a Class A permit. Further, the petitioners seek a writ of mandamus directing that in the future the DNR carry out its mandatory duties under W.Va.Code §§ 20–5F–4(a) and 20–9–12c. The petitioners also request that this Court rule on the constitutionality of W.Va.Code §§ 20–5F–4a and 20–9–12c.

Lackawanna Transport Company is a Pennsylvania corporation which the DNR recognized as the authorized operator of the Wetzel County Landfill by an order dated December 19, 1987, which limited the landfill to 10,400 tons of solid waste per month. This tonnage limitation was appealed to the State Water Resources Board, which entered an order on January 12, 1988, authorizing Lackawanna to dispose of 18,750 tons of solid waste per month at the Wetzel County Landfill.

The Solid Waste Management Act of 1983, W.Va.Code § 20–5F–5(d), required that all persons holding permits for solid waste facilities issued by the Department of Health apply for a solid waste permit from the DNR before June 10, 1987.[1] The former owners of the Wetzel County Landfill had filed this permit application and, pursuant to a DNR order issued in the fall of 1987, Lackawanna revised the permit application and sought a Class A renewal permit from the DNR.

By Executive Order 2–88, issued on February 15, 1988, West Virginia Governor Arch Moore ordered the DNR "to cease

---

1. West Virginia Code § 20–5F–5(d) (1989) states:

All existing permits of the department of health for solid waste facilities under section nine [§ 16–1–9], article one, chapter sixteen of the code shall continue in full force and effect until a permit is issued for that approved solid waste facility under this article: Provided, That all such existing permits of the department of health shall expire within five years of the effective date of this article [June 10, 1983]. Within four years of the effective date of this article, all persons holding such department of health permits shall apply to the chief

for a permit under this article: Provided, however, That the chief may require persons holding such existing health department permits to reapply under this section prior to four years from the effective date of this article if persistent violations of this article, any permit term or condition, orders or rules promulgated under this article, exist at that facility. Notwithstanding any other provision contained in this subsection, the department of natural resources may enter an extension order for a period of two years while an application for a permit pursuant to this article is pending.

issuing new solid waste permits, except for renewals of existing permits and permits which are necessary to complete projects funded by the West Virginia Resource Recovery Solid Waste Disposal Authority." The order concluded, "[p]ending the passage of certain relevant bills currently before the Legislature, this moratorium shall remain in effect until terminated by Order of the Governor."

Then, on May 2, 1988, Governor Moore announced in a press release that he was halting Lackawanna's permit process in order to prevent Lackawanna from receiving its permit prior to the effective date of new legislation controlling the application procedure. Governor Moore stated:

It is inappropriate to allow Lackawanna's application to proceed to the public comment and public hearing process.... The people of Wetzel and Tyler Counties need to know that I am not about to allow Lackawanna's application to slip through before the new law takes effect. It is absolutely critical to me that the local input feature of the new law be applied in the application.

The new law, which went into effect on June 10, 1988 states that:

For each commercial solid waste disposal permit or similar renewal permit application filed with the department of natural resources on and after the first day of January, one thousand nine hundred eighty-nine, prior to filing said application, a class A applicant shall first obtain an approval permit from the county or regional solid waste authority, as the case may be, established in accordance with article nine [§ 20-9-1 et seq.] of this chapter, covering the geographic area in which the solid waste disposal facility is to be located.

W.Va.Code § 20-5F-4a(a)(1) (1989). County commissions were required to promulgate rules and regulations which would govern the issuance or denial of the County Approval Permits. West Virginia Code § 20-5F-4a(d) (1989) provides, in part:

Each county commission ... shall as soon as practicable promulgate reasonable rules including, but not limited to,

rules for determining the effect of the proposed solid waste facility on residential, business or commercial property investment and values, and the social, economic, aesthetic and environmental impact on community growth and development in utilities, health, education, recreation, safety, welfare and convenience, if any, before issuing any approval permit pursuant to this section....

This new legislation also provides that "[e]ach county commission and authority may deny an approval permit based upon said rules and regulations or upon a finding of adverse public sentiment." W.Va. Code § 20-5F-4a(d).

On June 10, 1988, the DNR directed Lackawanna to obtain a County Approval Permit, as required by W.Va.Code § 20-5F-4a(a)(3) within thirty days. Pursuant to W.Va.Code § 20-5F-4a(d), the Wetzel County Commission promulgated the rules and regulations that would govern the issuance or denial of such permits in Wetzel County. Lackawanna submitted its application for an approval permit to the Wetzel County Commission on June 23, 1988.

Following public notice, a written comment period, and four days of public hearings, the Wetzel County Commission stated on July 11, 1988, that it did not "question the ability or suitability of Lackawanna Transport Company to operate a landfill in Wetzel County," and, based on the evidence presented, the Class A landfill proposed by Lackawanna would not have an adverse effect on the public health, safety, or welfare. However, the Wetzel County Commission denied Lackawanna's Class A permit application on the basis of adverse public sentiment and a finding that the citizens of Wetzel County did not want or need a Class A landfill. The Commission also noted that, "[t]o permit this site to be consumed at the level which the applicant seeks to do would cause this resource to be used up within 13 to 17 years." The estimated 16.5 year difference between operation at Class A and Class B levels "would constitute a significantly premature consumption of this valuable local resource."

By letter dated July 15, 1988 from the Chief of the Division of Waste Management, Lackawanna was put on notice that the DNR had ceased to review its Class A solid waste permit application since it had not obtained the necessary approval from the Wetzel County Commission. Lackawanna was also informed that failure to resubmit its application or submit a closure application would be grounds for the issuance of a cease and desist order.

On July 15, 1988, the DNR ordered Lackawanna to reduce the solid waste disposal at its landfill from 18,750 tons to no more than 9,999 tons per month effective August 15, 1988. Lackawanna appealed this order to the State Water Resources Board on July 25, 1988, arguing that the DNR could not unilaterally modify the Water Resources Board's January 12, 1988, order authorizing Lackawanna to accept 18,750 tons per month. The DNR filed a motion on July 28, 1988, requesting that the Water Resources Board modify the January 12, 1988, order and reduce Lackawanna's solid waste disposal to 9,999 tons per month. The Water Resources Board granted this motion on August 5, 1988, basing its decision upon the County Commission's denial of the County Approval Permit. On August 10, 1988, pursuant to W.Va.Code § 20–5F–4a(e), Lackawanna appealed the denial of the County Approval Permit to the Circuit Court of Wetzel County.

On August 22, 1988, Lackawanna petitioned the Water Resources Board to modify the August 5, 1988, order and increase Lackawanna's monthly tonnage to 18,750 tons until construction was completed upon the landfill's waste water treatment plant.[2] The Water Resources Board stated that it was "uncertain as to whether it has the legal authority pursuant to W.Va.Code § 20–5F–6(a) to establish a compliance schedule" and increase Lackawanna's tonnage to 18,750. Thus, Lackawanna's motion was denied by that Board on September 2, 1988. Lackawanna immediately appealed the Water Resources Board's denial to the Circuit Court of Kanawha County,

requesting a stay of the Board's order reducing Lackawanna's tonnage to 9,999 tons per month. The stay was granted on September 2, 1988 as the circuit court ordered that enforcement of the Water Resources Board's August 5, 1988 order and the DNR's July 15, 1988 order "reducing the authorized tonnage at Petitioner's Wetzel County Landfill to 9,999 tons per month" be stayed until January 1, 1989.

On September 7, 1988, the DNR ordered Lackawanna to stop accepting any waste at its landfill because it had failed to take any action listed in the July 15, 1988 letter and did not have a valid permit application pending before the DNR. Lackawanna obtained a temporary stay of this order from Judge John Hey in the Circuit Court of Kanawha County on September 8, 1988. However, Lackawanna and the DNR subsequently agreed that Lackawanna's pending Class A application would be considered as a Class B application (9,999 tons per month) until such time as Lackawanna obtained the County Approval Permit required by W.Va.Code § 20–5F–4a. This agreement was included as part of a September 14, 1988, order entered by the Circuit Court of Kanawha County in which the DNR also agreed to withdraw its September 7, 1988, cease and desist order.

On September 19, 1988, Halt Out of State Garbage, Inc. ("HOG"), a non-profit corporation from Wetzel County, filed a petition for a writ of prohibition in this Court. The petitioners argued that Kanawha County Circuit Court Judge John Hey exceeded his judicial authority in the September 2, 1988, order which stayed the Water Resources Board's reduction of Lackawanna's tonnage from 18,750 to 9,999 tons, thus permitting Lackawanna to continue to dispose of solid waste at the rate of 18,750 tons per month at the Wetzel County Landfill. Judge Hey's orders were stayed pending consideration of the issues by this Court. In November, 1988, we granted the writ of prohibition, concluding that the circuit court made a clear error of

**2.** Lackawanna maintained that it wished to avoid an uncontrolled discharge of leachate from the landfill which could occur if it were forced to reduce the volume of waste at its landfill before completion of the waste water treatment plant in January 1989.

law by issuing the stay because W.Va.Code § 20–5F–4a(2) was unambiguous and did not allow for solid waste disposal in excess of 9,999 tons per month without a County Approval Permit. *Ronald Potesta, et al. v. The Honorable John Hey, et al.,* No. 18697, (Nov. 1988).

On December 22, 1988, the Honorable Dennis R. Knapp, United States District Judge for the Southern District of West Virginia, held in the case of *Geo–Tech Reclamation, Inc. v. Potesta,* C.A. No. 2–87–0671, affirmed 886 F.2d 662 (4th Cir.1989), that the "significantly adverse to the public sentiment" provision contained in W.Va. Code § 20–5F–4(b) was unconstitutional "insofar as it permits public sentiment to be the determining factor in not granting a permit for developing a solid waste facility." [3] Thereafter, counsel for Lackawanna contacted counsel for the Wetzel County Commission for the purpose of reviewing the impact of the *Geo–Tech* decision on the Commission's denial of Lackawanna's County Approval Permit.

At this point, it is significant to note that pursuant to W.Va.Code § 20–9–5 (1988), on January 1, 1989, the Wetzel County Solid Waste Authority became responsible for most of the Wetzel County Commission's solid waste regulatory functions. However, prior to relinquishing this control, a public meeting of the Wetzel County Commission was held on December 28, 1988, at which time counsel for Lackawanna requested an executive session, pursuant to W.Va.Code § 6–9A–4(4), for the purpose of discussing a possible settlement of Lackawanna's appeal from the denial of its County Approval Permit. Eventually, the Commission's special counsel, James M. O'Brien, was directed to draft a proposed settlement agreement for the Commission's consideration. An open session of the Wetzel County Commission reconvened on December 29, 1988, and the proposed settlement agreement was approved and executed later that day. Under the terms of the settlement, the County Commission approved Lackawanna's application for a County Approval Permit and authorized Lackawanna to accept 25,000 tons of solid waste per month at the Wetzel County Landfill, with a variance of ten percent of the allowable tonnage.

In January, 1989, numerous citizens filed suit in the Circuit Court of Wetzel County seeking to invalidate the settlement agreement on grounds that the procedures which resulted in the agreement and the agreement itself violated provisions of W.Va. Code §§ 20–5F–1, *et seq.,* 20–9–1, *et seq.,* and 6–9A–1, *et seq.* The petitioner in the case now before us, the Wetzel County Solid Waste Authority, intervened in that action as a party petitioner and Lackawanna intervened as a party respondent. By letter dated January 20, 1989, the Wetzel County Commission advised counsel for Lackawanna that, "[i]n light of the fact that the agreement between Lackawanna and the County Commission appears to be under attack in the Supreme Court, I would take this opportunity to ask that Lackawanna take every step possible to mitigate any damages they might have incurred if the agreement is, in the future, struck down."

On January 9, 1989, Lackawanna requested that the DNR increase its landfill tonnage from 9,999 tons to the amount designated in the permit obtained through the settlement agreement. Subsequent written requests were made on March 31, 1989, and April 20, 1989. When the DNR did not act upon this request, Lackawanna filed a motion to stay the State Water Resources Board's August 5, 1988, and September 2, 1988, orders reducing Lackawanna's tonnage from 18,750 to 9,999 tons per month or, in the alternative, to reinstate the Board's January 12, 1988, order authorizing Lackawanna to accept 18,750 tons per month.

---

**3.** This decision was affirmed in *Geo–Tech Reclamation Industries, Inc. v. Hamrick,* 886 F.2d 662 (4th Cir.1989), in which the court held that "§ 20–5F–4(b)'s clause authorizing the Director to reject permits that are 'significantly adverse to the public sentiment' bears no substantial or rational relationship to the state's interest in promoting the general public welfare." *Id.* at 667.

On May 5, 1989, Kanawha County Circuit Court Judge Charles King remanded the case to the Water Resources Board for further review and consideration in light of the fact that Lackawanna had obtained a County Approval Permit since the Board's August 5, 1988 and September 2, 1988, orders. Lackawanna was authorized to accept 18,750 tons of waste per month at its landfill pending this review by the Board.

In August, 1989, the DNR advised Lackawanna that its pending permit application met all of the technical requirements of the November 4, 1988, solid waste management regulations. However, a draft permit and notice for public hearing were not prepared until May, 1990. In the interim, by order dated October 20, 1989, the DNR authorized Lackawanna to dispose of 25,000 tons of solid waste per month pursuant to the County Approval Permit issued by the Wetzel County Commission.

On March 10, 1990, the West Virginia Legislature enacted House Bill 4364, effective upon passage, which amended portions of Chapter 20, Articles 5 and 9 of the West Virginia Code. The requirement that Class A landfill applicants obtain County Approval Permits was abolished. West Virginia Code § 20–5F–4a, as amended, requires that all landfill applicants, regardless of tonnage, obtain a "Certificate of Site Approval." However, W.Va.Code § 20–9–12b(a) provided that these certificates were not required for existing commercial solid waste disposal facilities which were operating under a permit or compliance order issued by the DNR on March 10, 1990.

West Virginia Code § 20–9–12c was also amended by House Bill 4364. Persons who held a Class A approval permit or a compliance order issued by the DNR on the effective date of the Act were required to obtain "continuance approval" from the county commission by June 1, 1990, if they operated a landfill in excess of 10,000 tons per month. In May, 1990, the DNR prepared a draft Class A solid waste permit for is-

suance to Lackawanna. A public hearing on the issuance of the permit was scheduled for June 26, 1990, in Wetzel County. However, on May 29, 1990, the Wetzel County Commission decided not to approve Lackawanna's continued handling of more than 9,999 tons of solid waste per month. This decision was made pursuant to W.Va. Code § 20–9–12c(b) (1990), which provides, in relevant part:

> Notwithstanding any other provisions of this chapter to the contrary, a person who, on [March 10, 1990] holds a valid Class A approval permit or compliance order issued by the division of natural resources pursuant to article five-f of this chapter, may continue to operate if, by [June 1, 1990] the county commission of the county in which such facility is located approves the continued handling of ten thousand tons or more of solid waste per month: Provided, That the decision of the county commission is subject to review by referendum of the citizens of the county in which such facility is located.

West Virginia Code § 20–9–12c(b)(2) then states, in relevant part, that, "if the county commission disapproves the continued operation of such facility, the director ... shall, within thirty days ... amend the ... compliance order to require a decrease, over a period lasting no more than one year, in total tonnage to a level below ten thousand tons of solid waste per month." Thus, on June 15, 1990, the DNR issued a "scale down" order directing Lackawanna to gradually reduce its solid waste disposal from 25,000 tons to 9,999 tons per month by May 30, 1991.[4]

The petitioners in this case, the Wetzel County Solid Waste Authority, now argue that all of the DNR orders which authorized Lackawanna to dispose of more than 9,999 tons of solid waste per month were issued without lawful jurisdiction or authority because Lackawanna never obtained a valid Class A County Approval

---

**4.** On July 12, 1990 United States District Court Judge John T. Copenhaver, Jr. granted Lackawanna's motion for a temporary restraining order which restrained the DNR from enforcing its June 15, 1990 scale-down order. Lackawanna was permitted to continue disposing of 27,500 tons of solid waste per month at the Wetzel County Landfill.

Permit. The petitioners maintain that the DNR orders were based upon "the blatantly fallacious premise that Lackawanna obtained such valid permit approval in the December 29, 1988 Settlement Agreement."

On July 16, 1990, the Circuit Court of Wetzel County granted summary judgment in favor of the citizens who had challenged the validity of the December 29, 1988, settlement agreement and held that the Class A permit approval granted to Lackawanna in the settlement agreement was void *ab initio.* The circuit court stated:

> The question is:
>
>> Were the actions of the Wetzel County Commission, on December 28th and 29th, 1988, granting Lackawanna Transport Company a county approval permit to operate a solid waste landfill in violation of the law?
>
> The answer is yes. The actions were in contravention of law. The permit must fail....

> \*    \*    \*    \*    \*    \*

The salient facts in this case are that on December 29, 1988, the Wetzel County Commission granted county approval for Class A landfill to Lackawanna Transport Company without having given notice to the public as required by Section 4 of its own rules and regulations, promulgated on June 16, 1988, and without, in fact, having received an application for such a permit....

The petitioners and intervenor, Wetzel County Solid Waste Authority, have pleaded and argued various contentions which are persuasive toward establishing that the action of the Commission was infirm. The court has considered these contentions and found them well taken. However, it is not necessary in the disposition of these motions for summary judgment to address these contentions.

One arrow through the heart is sufficient.

Whether the commission did, or did not, have the legal right to "settle" AP–88–2–N is not material as the court views the action of the commission as a capitulation rather than a settlement.

\*    \*·    \*    \*    \*    \*

*Mullett, et al. v. Goddard, et al.,* C.A. No. 89–P–3–W, *Memorandum of Opinion,* pgs. 2–3, July 16, 1990 (Cir.Ct. of Wetzel County).

Lackawanna argues that the County Approval Permit issued on December 29, 1988, was in effect until July 16, 1990, when the Circuit Court of Wetzel County found that the settlement agreement violated the provisions of W.Va.Code § 6–9A–1 *et seq.*

■ This Court is not in a position to review the July 16, 1990, circuit court decision. The settlement agreement was declared invalid by that court and an appeal of that decision is not before this Court. Nor can we review the Wetzel County Commission's initial denial of the County Approval Permit, as the record of those proceedings has not been presented in this petition. On this point, we conclude only that because the settlement agreement has been set aside by the lower court, the effect is to annul any subsequent actions which authorized Lackawanna to dispose of waste in excess of 9,999 tons per month.[5] Consequently, there are no grounds upon which Lackawanna can claim to have a valid Class A County Approval Permit. Therefore, we find that the DNR cannot authorize Lackawanna to dispose of more than 9,999 tons of solid waste per month at the Wetzel County Landfill until Lackawanna meets the applicable statutory and regulatory requirements and receives a valid Class A County Approval Permit. It is the DNR's responsibility to ensure that the dictates of the statutes are followed.[6]

---

5. West Virginia Code § 6–9A–6 (1990) states, in relevant part, that, "[a]ny injunction granted pursuant to the provisions of this section may order that actions taken or decisions made in violation of this article *may be enjoined or annulled* if the petition therefor was filed within thirty days after the actions were taken or decisions made...." (Emphasis added).

6. On September 20, 1990 this Court entered a stay and ordered that Lackawanna could not receive more than 9,999 tons of solid waste per month at the Wetzel County Landfill.

**490**

■ Next, the petitioners ask that this Court rule on the constitutionality of several aspects of the West Virginia Solid Waste Management Act, W.Va.Code § 20–5F–1, *et seq.*[7] As we noted above, we cannot and will not review the constitutionality of the Wetzel County Commission's denial of the County Approval Permit to Lackawanna under W.Va.Code § 20–5F–4a(d), as that administrative record is not before us. However, we concur in the opinion expressed by Lackawanna in its brief that the primary motivation behind W.Va.Code § 20–5F–4a is to enable counties to determine the effect that a Class A landfill will have on various factors which collectively comprise the public health, safety and welfare. The purpose behind the statute is not to restrict the flow of interstate commerce.

■ Following this reasoning, we must reject Lackawanna's contention that the "continued handling" approval provision in W.Va.Code § 20–9–12c(b) is unconstitutional in that it violates the Commerce Clause by restricting waste that moves in interstate commerce. The statute sets legitimate tonnage restrictions which are applicable to all solid waste, regardless of its origin, and not to the movement of solid waste into this State. We perceive of no impermissible discriminatory intent.

Lackawanna also argues that the "adverse public sentiment" provision in W.Va. Code § 20–5F–4a(d) (1989) is unconstitutional. West Virginia Code § 20–5F–4a(d) states, in relevant part: "Each county commission ... may deny an approval permit based upon ... a finding of adverse public sentiment." Lackawanna argues that this section is "substantially identical" to the provision in W.Va.Code § 20–5F–4(b) (1989), which allowed the DNR director to "deny the issuance of a permit ... if the solid waste facility ... is *significantly adverse to the public sentiment* of the area where the solid waste facility is, or will be, located." (Emphasis added). In *Geo–Tech Reclamation Industries, Inc. v. Potesta,*

C.A. No. 2–87–0671, affirmed 886 F.2d 662 (4th Cir.1989), Judge Dennis R. Knapp of the United States District Court for the Southern District of West Virginia found W.Va.Code § 20–5F–4(b) to be an unconstitutional delegation of power, "perceiving no rational basis for permitting a few to restrict the use of another's property." In affirming the district court's decision, however, the Fourth Circuit did not reach the issue of whether W.Va.Code § 20–5F–4(b) "works an impermissible delegation of power to local residents," finding instead that "the statute suffers from a more profound constitutional infirmity." *Geo–Tech Reclamation Industries, Inc. v. Hamrick,* 886 F.2d 662 (4th Cir.1989). This "more profound constitutional infirmity," according to the court, was the lack of "any meaningful standard by which the Director is to measure adverse public sentiment." *Id.* at 666.

■ We do not believe that the "adverse public sentiment" referred to in W.Va.Code § 20–5F–4a(d) needs to be either quantified or qualified. The statute states succinctly that if "adverse public sentiment" exists, the county commission or authority may then deny an approval permit. It is at this point that W.Va.Code § 20–9–12c, as amended in 1990, provides for a public referendum on the issue of either the establishment or the continuation of a Class A facility. Specifically, W.Va. Code § 20–9–12c(b) (1989) states that "the decision of the county commission is subject to review by referendum of the citizens of the county in which such facility is located." We find no impermissible delegation of legislative authority in this procedure. To the contrary, the United States Supreme Court has held that:

> ... [a] referendum cannot ... be characterized as a delegation of power. Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments

7. First, with regard to W.Va.Code § 20–5F–4a, Lackawanna states that it does not contend that the statute is, on its face, unconstitutional or in violation of the Commerce Clause. Rather, Lackawanna submits that in denying its County Approval Permit under W.Va.Code § 20–5F–4a on the basis of "lack of need/premature consumption," the County Commission applied the statute in an unconstitutional manner.

which they create. See, e.g., Federalist Papers, No. 39 (Madison). In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature. *Hunter v. Erickson,* 393 U.S. 385, 392, 21 L.Ed.2d 616, 89 S.Ct. 557, [561] 47 Ohio Ops.2d 100 (1969).

*City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 672, 96 S.Ct. 2358, 2361–62, 49 L.Ed.2d 132, 137 (1976).

In *Eastlake,* which involved a city-wide referendum regarding a rezoning ordinance, the Supreme Court discussed the two cases the Ohio Supreme Court relied upon when it invalidated Eastlake's referendum procedure—*Washington ex rel. Seattle Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928) and *Eubank v. City of Richmond,* 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912). Both *Roberge* and *Eubank* were also referred to by the District Court and the Fourth Circuit in the *Geo–Tech* discussions regarding delegations of authority. Thus, it is significant that in *Eastlake,* the Supreme Court stated that, "[t]he thread common to both decisions is the delegation of legislative power, originally given by the people to a legislative body, and in turn delegated by the legislature to a *narrow* segment of the community, not to the people at large." *Eastlake,* 426 U.S. at 677, 96 S.Ct. at 2364, 49 L.Ed.2d at 140. The Court went on to state that:

Neither Eubank nor Roberge involved a referendum procedure such as we have in this case; the standardless delegation of power to a limited group of property owners condemned by the Court in Eubank and Roberge is not to be equated with decisionmaking by the people through the referendum process. The Court of Appeals for the Ninth Circuit put it this way:

"A referendum, however, is far more than an expression of ambiguously founded neighborhood preference. It is the city itself legislating through its voters—an exercise by the voters of their traditional right through direct legislation to override the views of

their elected representatives as to what serves the public interest." *Southern Alameda Spanish Speaking Organization v. City of Union City, California,* 424 F.2d 291, 294 (1970).

*Id.* at 678, 96 S.Ct. at 2364, 49 L.Ed.2d at 140.

The referendum option in W.Va.Code § 20–9–12c provides a method by which an applicant can seek public approval for their operation of a solid waste facility. Alternatively, however, it allows voters the opportunity to override approval which has already been granted. It is the opinion of this Court that this public referendum feature is not a "standardless delegation of power to a limited group." *Id.* Instead, it presents the people at large with an opportunity to engage in decisionmaking on a matter that most often is at the center of great public concern and debate.

■ To summarize our holding, we grant the writ of prohibition prayed for by the petitioners in this case. Because the December 29, 1988 settlement agreement was declared void *ab initio,* the DNR's actions in granting Lackawanna a County Approval Permit pursuant to the agreement, and thereafter continuing to authorize the disposal of solid waste in excess of 9,999 tons per month, are annulled. Mandamus is appropriate to ensure that the DNR executes its statutory responsibilities and does not authorize Lackawanna to dispose of more than 9,999 tons of solid waste per month at the Wetzel County Landfill until Lackawanna meets the applicable statutory and regulatory requirements and receives a valid Class A County Approval Permit.

Thus, for the foregoing reasons, the writs of prohibition and mandamus prayed for by the petitioners are granted.

Writs Granted.