414 S.E.2d 620

STATE of West Virginia ex rel. J. Edward HAMRICK, III, Director, West Virginia Division of Natural Resources, Plaintiff Below, Appellant,

v.

LCS SERVICES, INC., a West Virginia Corporation; Chambers of West Virginia, Inc., a West Virginia Corporation; and Chambers Development Company, Inc., a Delaware Corporation, Defendants Below, Appellees.

STATE of West Virginia ex rel. J. Edward HAMRICK, III, Director, West Virginia Division of Natural Resources, Plaintiff Below, Appellant,

v.

CHAMBERS DEVELOPMENT COMPANY, INC., a Delaware Corporation; Chambers of West Virginia, Inc., a West Virginia Corporation; and LCS Services, Inc., a West Virginia Corporation, Defendants Below, Appellees.

No. 20127.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Rehearing Denied Feb. 14, 1992.

Filed as Modified Feb. 14, 1992.

Mario J. Palumbo, Robert D. Pollitt, Michael A. Lawrence, Office of the Atty. Gen., Charleston, for the plaintiff below, appellant.

P. Rodney Jackson, Lonnie C. Simmons, Anne E. Shaffer, DiTrapano & Jackson, Charleston, for the defendants below, appellees.

McHUGH, Justice:

This case, which consolidates two civil actions from the Circuit Court of Berkeley County, is before this Court upon the appeal of J. Edward Hamrick, III, Director of the West Virginia Division of Natural Resources (DNR), a plaintiff below. The appellees and defendants below are LCS Services, Inc. (LCS), Chambers of West Virginia, Inc., and Chambers Development Company, Inc. (Chambers). Other plaintiffs below in Civil Action No. 90–C–366 who are not parties to this appeal are George Max Robertson, Acting Chief of the DNR's Section of Waste Management, and the Berkeley County Solid Waste Authority. Robertson is also a plaintiff below in Civil Action No. 90–C–711.[1]

In No. 90–C–366, the DNR is seeking a declaration that LCS was operating a landfill without a certificate of site approval, in violation of *W.Va.Code*, 20–9–12b [1990]. In No. 90–C–711, the DNR is seeking a preliminary injunction and a declaration that the handling of 10,000 tons or more of solid waste per month by the appellees would be in violation of *W.Va.Code*, 20–9–12c [1990].[2]

Although the procedural facts of this case are complex, the legal principles involved are not complicated. Two statutes are *primarily* involved in this case, namely, *W.Va.Code*, 20–9–12b [1990], and *W.Va. Code*, 20–9–12c [1990], both part of the County and Regional Solid Waste Authorities article, which was originally enacted in 1988. This case also involves the "Solid Waste Management Act," *W.Va.Code*, 20–5F–1 to 20–5F–8, which was originally enacted in 1983. In order to avoid confusion resulting from the procedural complexities of this case and the several amendments to statutes under *W.Va.Code*, chapter 20, articles 5F and 9, we limit our use of reprinting all of the related provisions in their entirety. Rather, our focus is mainly upon the primary statutes at issue, particularly, *W.Va.Code*, 20–9–12b [1990], which sets forth a requirement for a certificate of site approval, and *W.Va.Code*, 20–9–12c [1990], which imposes tonnage limitations upon solid waste.

At issue in this appeal are the November 5, 1990 and December 13, 1990 orders of the Circuit Court of Berkeley County, which denied the DNR's attempt to enforce these two statutes against the appellees.

I

In 1987, LCS filed an application with the DNR for a permit for a solid waste facility.

---

1. In addition to the briefs of the parties, this Court has also reviewed the briefs of several *amici curiae,* including the Berkeley County Solid Waste Authority, the Town of Hedgesville, and a brief filed by several environmental organizations.

2. These statutory provisions are discussed *infra.*

   Many of the statutes which pertain to this case were amended by the legislature in October, 1991. These amendments, however, have no bearing on this case.

The application was denied on three statutory grounds, namely: (1) destruction of aesthetic values; (2) destruction or endangerment of the property of others; and (3) adverse public sentiment.[3]

LCS appealed the DNR's decision to the West Virginia State Water Resources Board.[4] On February 3, 1988, the Water Resources Board held that the permit was improperly denied based upon the first two grounds, that is, destruction of aesthetic values and destruction or endangerment of the property of others. However, the Water Resources Board upheld the DNR's denial with respect to the third ground, adverse public sentiment "pending ruling by the U.S. District Court on the constitutionality of the criterion of adverse public sentiment in the area as a basis for denial of the permit application." [5]

Subsequent to the order of the Water Resources Board, but before the United States District Court for the Southern District of West Virginia ruled on the constitutionality of the "adverse public sentiment" provision, specifically, on March 12, 1988, the legislature enacted *W.Va.Code*, 20–5F–4a, which, under the pertinent amended version, requires, prior to filing for a permit with the DNR, applicants to "obtain a certificate of site approval from the county or regional solid waste authority," pursuant to *W.Va.Code*, 20–9–12b, as amended. *W.Va.Code*, 20–5F–4a(a)(1) [1990].

On December 22, 1988, the United States District Court for the Southern District of West Virginia (the "District Court") held that the "adverse public sentiment" provision of *W.Va.Code*, 20–5F–4(b) [1983, 1988] is unconstitutional because it violates due process principles.[6] On January 18, 1989, the District Court issued a temporary restraining order to the Water Resources Board to reconsider the DNR's denial of LCS's permit application in accordance with the District Court's December 22, 1988 decision and the applicable laws in effect *on February 3, 1988,* which was the date that the Water Resources Board upheld the DNR's denial based upon the "adverse public sentiment" provision of *W.Va.Code*, 20–5F–4(b) [1983]. Consequently, the appellees argue that application of the laws in effect on February 3, 1988 would preclude considering the provisions requiring site approval by the county or regional solid waste authority.

As stated previously, under *W.Va.Code*, 20–9–12b [1989], a certificate of site approval from the county or regional solid waste authority is required prior to construction or installation of a solid waste landfill.[7]

---

3. *See W.Va.Code*, 20–5F–4(b), as amended.

4. *See W.Va.Code*, 20–5F–7 [1983].

5. Apparently, LCS indicated to the Water Resources Board that it intended to challenge the constitutionality of the "adverse public sentiment" provision.

6. *See U.S. Const.*amend. XIV.

7. Specifically, *W.Va.Code*, 20–9–12b(a) [1989] provides that until July 1, 1991,

it shall be unlawful for any person to establish, construct or install a commercial solid waste landfill or transfer station, or to expand the spatial land area of such an existing facility, without a certificate of site approval from the county or regional solid waste authority for the county in which the facility would be situated[.]

*W.Va.Code*, 20–9–12b(a) [1989] further provides that if, on that section's effective date, April 8, 1989, a person already "holds a Class A approval permit *issued by a county commis-*

*sion*," then such person "may obtain site approval from the county commission[.]" (emphasis supplied)

Finally, *W.Va.Code*, 20–9–12b(a) [1989] contains the following important provision:

That no such certificate [of site approval] will be required for such an existing commercial solid waste facility which on the effective date of this section held a valid solid waste permit or compliance order issued by the [division] of natural resources unless such facility increases its spatial land area beyond that authorized by such solid waste permit or compliance order.

A "Class A facility" is "a commercial solid waste disposal facility which handles an aggregate of ten thousand tons or more of solid waste per month[.]" *W.Va.Code*, 20–5F–2(m) [1990].

*W.Va.Code*, 20–9–12b was amended in 1990. The amendment, however, was minor, and has no bearing on this case.

These statutory requirements reflect the spirit of the Solid Waste Authorities article, wherein the legislature has found that

local land use conflicts are most effectively resolved in a local governmental forum where

On September 25, 1989, the United States Court of Appeals for the Fourth Circuit affirmed the District Court's December 22, 1988 decision which held the "adverse public sentiment" provision unconstitutional. *Geo–Tech Reclamation Industries, Inc. v. Hamrick*, 886 F.2d 662 (4th Cir.1989).

Two days later, on September 27, 1989, the Water Resources Board issued a permit to LCS to construct and operate a solid waste facility. The Water Resources Board, in its findings, noted that the laws in effect on February 3, 1988 are applicable to LCS. No appeal from this decision was filed.

Shortly thereafter, the DNR took the public position that county authorities could prevent the construction and operation of the facility by denying site approval pursuant to *W.Va.Code*, 20–9–12b [1989]. Consequently, LCS filed a motion in the United States District Court to declare those statutes inapplicable.

Following a hearing, the District Court entered an order, dated October 26, 1989, requiring the DNR to apply the laws governing permit applications which were in effect on February 3, 1988 to LCS. On May 31, 1990, the District Court entered an order which stated that "injunctive relief is necessary in aid of this Court's jurisdiction to protect or effectuate the judgment of this Court *entered on October 26, 1989* [.]" (emphasis supplied) Accordingly, LCS began construction of the facility. The District Court's May 31, 1990 order was appealed to the United States Court of Appeals for the Fourth Circuit.

On May 15, 1990, the DNR instituted an action against LCS and Chambers in the Circuit Court of Berkeley County (No. 90–C–366), seeking a declaration that LCS was operating a landfill without a certificate of site approval from county or regional solid waste authorities. On September 27, 1990, the DNR instituted another action against LCS and Chambers in that circuit court (No. 90–C–711), seeking a preliminary injunction and a declaration that the handling of 10,000 tons or more of solid waste per month by the appellees would be in violation of *W.Va.Code*, 20–9–12c [1990], which pertains to tonnage limitations.[8]

Following hearings, the Berkeley County Circuit Court denied the relief sought by the DNR in orders dated November 5, 1990, and December 13, 1990. In the December 13, 1990 order, the circuit court stated that "the permit application procedures in effect as of February 3, 1988 apply to the solid waste facility permit issued to Defendant LCS Services, Inc. Under the doctrines of res judicata and collateral estoppel, this [Circuit] Court is bound to follow and apply these orders [of the United States District Court], regardless of whether or not this [Circuit] Court would have ruled similarly had the issue first been presented to it."

In February, 1991, however, the United States Court of Appeals for the Fourth Circuit reversed the District Court's May 31, 1990 order which had enjoined the DNR

---

citizens can most easily participate in the decision-making process and the land use values of local communities most effectively identified and incorporated into a comprehensive policy which reflects the values and goals of those communities.
*W.Va.Code*, 20–9–1(3) [1990].

**8.** In 1990, *W.Va.Code*, 20–9–12c was enacted and provides, in pertinent part:

(b) Notwithstanding any other provisions of this chapter to the contrary, a person who, on the effective date of this section, holds a valid Class A approval permit or compliance order issued by the division of natural resources, pursuant to article five-f of this chapter, may continue to operate if, by the first day of June, one thousand nine hundred nine-

ty, *the county commission of the county in which such facility is located approves the continued handling of ten thousand tons or more of solid waste per month:* Provided, That the decision of the county commission is *subject to review by referendum of the citizens* of the county in which such facility is located.

(emphasis supplied)

In July 1990, the Berkeley County Commission voted to not approve of 10,000 tons of solid waste per month at North Mountain, where the LCS facility is located.

We upheld the constitutionality of *W.Va.Code*, 20–9–12c(b) [1990] in *Wetzel County Solid Waste Authority v. West Virginia Division of Natural Resources*, 184 W.Va. 482, 401 S.E.2d 227 (1990), specifically, that that provision is not violative of the Commerce Clause.

from prosecuting state court actions against LCS. *LCS Services, Inc. v. Hamrick,* 925 F.2d 745 (4th Cir.1991).

In reversing the District Court's order, the Fourth Circuit focused on whether the lower court's order violated 28 *U.S.C.* § 2283 (1948), the "Anti–Injunction Act." That Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or *to protect or effectuate its judgments.*" (emphasis supplied)

LCS argued before the Fourth Circuit that the injunction ordered by the District Court was proper under the Act's exception to protect or effectuate judgments. In rejecting this claim, the court held:

> [W]e find that this exception does not apply, because no claim or issue pending in the state court actions has ever been decided by the United States District Court. The district court has only made two prior judgments: (1) that the statutory provision for granting permits was unconstitutional, and (2) that the state had to apply the permit application procedures in effect on February 3, 1988 to LCS. Neither of these judgments affects the state actions and the state actions do not seek to relitigate the two issues decided by the prior actions in the district court.

925 F.2d at 749.

## II

As we stated previously, and as can be seen from the recitation in section I, the procedural facts of this case are complex. However, the legal principles involved are not.

The issue in this case is whether the circuit court committed error by applying the doctrines of *res judicata* and collateral estoppel to the questions before it. We hold that the circuit court did commit error under these circumstances, and accordingly, we reverse that court's orders.

■ With respect to the doctrine of *res judicata,* this Court follows a well established principle:

> An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*

Syl. pt. 1, *Sayre's Adm'r v. Harpold,* 33 W.Va. 553, 11 S.E. 16 (1890) (emphasis in original). *Accord,* syl. pt. 1, *Sattler v. Bailey,* 184 W.Va. 212, 400 S.E.2d 220 (1990); syl. pt. 1, *State ex rel. Division of Human Services v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990); syl., *Goodwin v. Thomas,* 179 W.Va. 593, 371 S.E.2d 90 (1988); *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 298, 359 S.E.2d 124, 131 (1987); syl. pt. 2, *Moran v. Reed,* 175 W.Va. 698, 338 S.E.2d 175 (1985); syl. pt. 3, *Wolverton v. Holcomb,* 174 W.Va. 812, 329 S.E.2d 885 (1985); syl. pt. 1, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983); syl. pt. 1, *In re Estate of McIntosh,* 144 W.Va. 583, 109 S.E.2d 153 (1959).

■ Related to this doctrine is the doctrine of collateral estoppel. We have explained and restated our summary of the doctrine of collateral estoppel in syllabus point 2 to *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983):

> Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:
>
> 'But where the causes of action are not the same, the parties being identical or in

708

privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.'* *Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

LCS contends that the issue of whether to apply the law which was effective on February 3, 1988, or the subsequently enacted provisions, has already been litigated by the federal district court, and therefore, is barred from relitigation. LCS reasons that but for application of the "adverse public sentiment" provision, which was ultimately declared unconstitutional, then it would have been granted the permit on February 3, 1988, and thus, would have had the permit prior to enactment of the new requirements for issuance of a permit, specifically, obtaining a certificate of site approval. The Water Resources Board followed this line of reasoning as well when it issued LCS the permit.

The DNR, on the other hand, contends that it has not had a full and fair opportunity to litigate the site approval and tonnage limitation issues, and that no court has considered the merits of those issues.

We agree with the DNR that the circuit court committed error by applying the doctrine of *res judicata* and collateral estoppel in this case. The federal district court did not rule on the *merits* of this case, that is, whether or not LCS was entitled to a permit under the law. Rather, the federal district court merely determined which law would apply, namely, the law in effect on February 3, 1988. This was not a decision on the merits.

Under the certificate of site approval provision, no certificate is required for "an *existing* commercial solid waste facility" which holds "a *valid* solid waste permit" issued by the DNR. *W.Va.Code,* 20–9–12b(a) [1989] (emphasis supplied). Whether or not LCS, which began constructing its

solid waste facility sometime after October 26, 1989, is an *"existing* commercial solid waste facility"* and whether it held a *"valid"* permit issued by the DNR are issues which have not been litigated by any court. Clearly, these questions would be part of the merits in this case.

As pointed out previously herein, the United States Court of Appeals for the Fourth Circuit noted that one of the two judgments already made by the federal district court is "that the state had to apply the *permit* application procedures in effect on February 3, 1988 to LCS." *LCS Services, Inc. v. Hamrick,* 925 F.2d 745, 749 (4th Cir.1991) (emphasis supplied). The Fourth Circuit went on to point out that "[t]he *certificate of site approval* is separate from the operating *permit* procedure and is issued by the county rather than DNR." *Id.* (emphasis supplied)

The circuit court's orders in this case are devoid of any finding with regard to whether LCS needs a certificate of site approval, *even assuming the February 3, 1988 law applies.* Rather, the orders fail to address the provision which sets forth the requirements pertaining to the certificate of site approval, and whether LCS is subject to such requirements.[9]

With respect to the tonnage limitation provision, again, the circuit court failed to address the applicability of this provision on LCS. Therefore, the doctrines of *res judicata* and collateral estoppel have no application in this regard either, although, we do point out that, unlike the certificate of site approval issue, LCS makes no specific argument as to why it would be exempt from application of the tonnage limitation provision.

■ Accordingly, when a federal district court orders the state Division of Natural Resources (DNR) to comply with state permit procedures for a solid waste facility which were in effect on February 3, 1988, and which procedures on that date required only a permit from state DNR authorities, but subsequent to that date, the legislature

9. We do not intimate any opinion as to how this Court would decide the merits of this case. Rather, our decision is limited to holding that the circuit court committed error by applying

the doctrines of *res judicata* and collateral estoppel to this case because the issue of whether a certificate of site approval is necessary *under the facts of this case* has not been decided.

enacts new provisions, *W. Va. Code,* 20–5F–4a, as amended, and *W. Va. Code,* 20–9–12b, as amended, which require a certificate of site approval from county or regional solid waste authorities, the DNR may institute an action in circuit court to adjudicate the issue of compliance with the requirement for a certificate of site approval from county or regional solid waste authorities. Because the issue of the requirement of a certificate of site approval from county or regional solid waste authorities was not litigated in the federal district court, it is error for the circuit court to apply principles of *res judicata* and collateral estoppel to bar litigation seeking to adjudicate this issue in the circuit court.

■ Furthermore, when a federal district court orders the state Division of Natural Resources (DNR) to comply with state permit procedures for a solid waste facility which were in effect on February 3, 1988, and which procedures on that date required only a permit from state DNR authorities, but subsequent to that date, the legislature enacts a new provision, *W. Va. Code,* 20–9–12c [1990], which requires approval by a county commission for the continued handling of 10,000 tons or more of solid waste per month, the DNR may institute an action in circuit court to adjudicate the issue of compliance with this requirement. Because the issue of approval by a county commission for the continued handling of 10,000 tons or more of solid waste per month was not litigated in the federal district court, it is error for the circuit court to apply principles of *res judicata* and collateral estoppel to bar litigation seeking to adjudicate this issue in the circuit court.

Therefore, we hold that the circuit court committed error in its application of the doctrines of *res judicata* and collateral estoppel.[10]

Consistent with the foregoing, the November 5, 1990, and December 13, 1990 orders of the Circuit Court of Berkeley County are reversed and this case is remanded to that court for proceedings in accordance with this opinion.

Reversed and remanded.

**10.** The parties in this case do not contest any issue with respect to whether the legislature has the power to enact statutes that would have retroactive implications. Rather, the contention of LCS concerns the retroactive *application* of the certificate of site approval and tonnage limitation provisions to *their* permit application. However, we need not reach this question because the issue before us is whether the circuit court committed error by applying the doctrines of *res judicata* and collateral estoppel to the issues before that court.

The only reference to the retroactivity of these statutes by the circuit court is contained in its findings pertaining to the November 5, 1990 order. These findings, however, merely address the general principles of retroactive legislation. As noted in the previous paragraph, the authority of the legislature to enact statutes that have retroactive implications is not contested before us. It is not clear from the record before us that the circuit court decided the issues of whether the requirements for a certificate of site approval and tonnage limitations apply *to LCS,* as "an existing commercial solid waste facility" which holds a "valid solid waste permit." Nor is it certain that this issue was fully argued before the circuit court. It is clear, however, that the circuit court, in applying the doctrines of *res judicata* and collateral estoppel,

gave effect to the order of the federal district court. On remand, the circuit court should adjudicate the merits *independent* of the federal district court's order. Due to the lack of clarity in this regard, we will not put form to what the parties or lower court have failed to articulate. " 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985).

LCS also contends that a "settlement" was reached with the DNR, wherein the DNR allegedly agreed to apply the laws in effect on February 3, 1988. This contention is not relevant to this Court's consideration of this case for a number of reasons. Part of this "settlement" allegedly involves an end to the voluminous litigation between the parties, including a suit filed by LCS against the DNR in January, 1989, seeking to close the Berkeley and Jefferson County landfills due to pollution. However, this case is not even before us. Moreover, the issue of whether the DNR would even have the authority to decide which laws would apply is not before us. In any event, it is asserted that a "motion to enforce settlement" is pending in the United States District Court.